37 So.2d 212
### VREDENBURGH SAW MILL CO. v. BLACK et al.
#### I Div. 323.

Supreme Court of Alabama.

Oct. 14, 1948.

C. L. Hybart and R. L. Jones, both of Monroeville, and Ball & Ball, of Montgomery, for appellant.

304

Barnett, Bugg & Lee, of Monroeville, and Johnston, McCall & Johnston, of Mobile, for appellees.

BROWN, Justice.

This is an action on the case by the personal representatives of John W. Deer, deceased, for damages under the homicide act, against the defendant for wrongfully causing his death on September 26, 1946. The case was submitted to the jury under counts 1, 3 and 4 of the complaint. Counts 1 and 3 ascribe intestate's death to the negligence of defendant's servant or agent while acting within the line and scope of his employment in the operation of a logging truck on the public highway leading past and in front of deceased's residence. The fourth count ascribed the death of plaintiff's intestate to the wanton conduct of said agent or servant.

The defendant pleaded in short by consent, the general issue, with leave "to give in evidence any matter which if well pleaded would be admissible in defense of the action, to have effect as if so pleaded; and with leave to the plaintiff to give in evidence any matter which if well pleaded would be admissible in reply to such defense matter, to have effect as if so pleaded."

The trial resulted in a verdict for plaintiff assessing the damages at $17,500 followed by motion for new trial which was overruled. Judgment entered in accordance with the verdict from which the defendant has appealed.

 The evidence is without dispute that plaintiff's intestate was run against and injured about noon on September 26, 1946, on the Monroeville and Camden Public Highway, five miles south of Franklin in Monroe County. The road was thirty feet

in width, was straight for some distance before it reached the point of the collision, with graveled surface. Defendant's truck loaded with logs while being driven by defendant's servant—Abner Moody—an experienced truck driver, who had been in its service for several years, ran upon or against said deceased, injuring him so that he died within about one hour thereafter. The evidence further shows that some distance south of the place of said injury, the truck had been loaded with logs by the driver in the woods and had been driven out upon the highway and was proceeding north toward defendant's mill. The truck entered upon the highway about a mile south of Deer's residence. That deceased was a farmer, a man 80 years of age, but spry and active for one of his age. His residence and barn were located on the west side of the highway, the barn being south of the residence approximately 114 feet. The pasture was on the opposite or right side of the highway, the gate of which was immediately across the highway from the barn lot gate. The evidence goes to show that Deer and his farmhand, one McKinley, had turned two mules out of the barnyard to put them in the pasture across the highway through the gate. McKinley and the driver of the truck were the only eye witnesses to the catastrophe.

McKinley, as a witness for plaintiff, testified that deceased had crossed the highway and was standing on the edge thereof as the mules were driven across and had been there some 3 or 4 minutes before the truck approached the place. That the truck swerved to the right, striking deceased, knocking him down and dragging him a distance of about 30 to 40 feet. There was evidence offered by the plaintiff going to show that a person looking southward down the public highway in the direction from which the truck approached could see approximately one-fourth of a mile. The lot gate was approximately 35 feet west of the west margin of the highway and the pasture gate was about 10 to 12 feet east of the east margin of the highway. There was evidence going to show that deceased, after he was stricken by the truck, was immediately opposite his residence, lying with his head 45 degrees north

of west and his feet from a few inches to 2 or 3 feet west of the east margin of the highway. There was some evidence showing that his feet and legs extended over the margin of the highway onto the grass or weeds and his hat was off the highway near where he was first stricken. Plaintiff adduced evidence tending to corroborate the testimony of the witness McKinley.

The truck driver testified that as he approached the place of the catastrophe, he discovered the mules, first one then the other; that he swerved his truck to the right to avoid hitting the mules and one of the mules made the crossing immediately ahead of the truck, the other turned north and that the deceased, who came out of a clump of high weeds west of the highway attempting to head the mule and turn it across the road, ran out into the middle of the road, stopped ten feet ahead of the truck and then started to run again and ran in front of the truck.

The circumstances of the catastrophe, the location of the body, the marks on the highway made by the wheels of the truck and other evidentiary facts were given in detail from witnesses who came to the scene of the accident immediately thereafter and while the deceased was still at the point on the highway where the truck left him. He was still alive when the sheriff and others arrived at the scene. Without stating more of the details, our conclusion is that, the evidence presented a case for jury decision and that the affirmative charges as framed relating to counts 1, 3 and 4 were refused without error.

■ It has long since been settled by our decisions that where the complaint contains several counts, special requested written charges, which direct the jury if they believe the evidence they should find for the defendant on one or the other of said counts, are properly refused. The reason as stated in one of our earliest decisions is that such charge is calculated to impress the jury with the idea that a separate verdict must be rendered as to each count though under some they may find for the plaintiff. The tendency of such charge is to mislead or confuse and requires explanation. Mobile & Ohio R. Co. v. George, 94 Ala. 199,

10 So. 145; Christian Benevolent Burial Ass'n. v. Huff, 241 Ala. 119, 1 So.2d 390.

The record shows that after the trial court "had finished qualifying the jury," he asked the attorneys for the plaintiff and for the defendant if they had any questions that they would like for him to ask the jury. Whereupon Mr. Johnston, attorney for the plaintiff, said:

" * * * I understand that the Defendant is insured by the Indemnity Insurance Company of North America, and I wish your Honor would qualify the jury as to whether any of them are employees or stockholders of that Insurance Company, or whether they have any interest whatsoever in it.

"Mr. Ball: (For Defendant) We object—

"The Court: Gentlemen are either of you employees or stockholders in the Indemnity Insurance Company of North America, or have you any interest whatsoever in that company? * * *."

Thereupon the jury was allowed to retire into the jury room and defendant's counsel moved for a continuance of the case on the ground that the statement made by Mr. Johnston that he understood that the defendant had insurance was prejudicial to the defendant because that statement was made in the presence of the entire panel of the jury and was made by Mr. Johnston in their presence for the purpose of prejudicing the jury. The attorney for defendant continued:

" * * * The usual way to get the jury qualified as to interest is for that information to be given to the Court privately. We had furnished the information—the name of the Insurance Company—to Mr. Johnston's associates, and to Mr. Johnston, thinking that he would handle it in the usual way. Instead of doing that, he is taking advantage of the situation and gotten in front of the whole panel and made the announcement that the defendant has insurance—that the—that he understand that the defendant has insurance in that Company—that could not possibly have been for any reason except to emphasize, and tell the jury that this defendant has insurance with the idea, not that the case would be tried on its merits, but on some idea of prejudice—that the defendant has insurance, and we ask your Honor, in view of what has taken place before this panel and jury, that this case be continued and be brought up again at another term of court with a jury that has not been poisoned by the statement made by the attorney for the Plaintiffs—bringing in a foreign issue—an issue that has no place in a court of justice, and we ask your Honor to continue the case.

"Mr. Johnston (for Plaintiff): If your Honor please, with all due respects to the gentleman, he can't read my mind to determine what my purpose is. I have a right to qualify the jury as to the interest in the Indemnity Insurance Company of North America, which Company I do understand has insurance in this case. Whatever may be the practice as he knows it, it is very different to what the practice has been in the Circuit which I have practiced in. I have never known of the information being given privately to the Judge * * *."

Further statements were made by counsel for each side as to the practice in respect to this matter. The court did not err in overruling the defendant's motion for a continuance. International Harvester Co. et al. v. Williams, 222 Ala. 589, 133 So. 270.

On the hearing of the motion for a new trial an affidavit that was made by one of the attorneys representing the defendant goes to show that at the request of Mr. A. C. Lee, one of the attorneys for the plaintiff who lives in Monroeville, he disclosed to Mr. Lee the fact that defendant was insured, the name of the insurance company was furnished to him and on October 7th, defendant's attorney wrote to the plaintiff's attorney, Mr. Johnston, advising him of the information which he had given to Mr. Lee. The motion for new trial was overruled.

The appellant insists that in this ruling the court committed error for which the judgment should be reversed. We are not of the opinion that the acts of counsel for the plaintiff, construed in the light of the affidavit, were prompted by improper motives. His remarks were addressed to the court who had called on counsel to speak and he only asked for that to which his clients were entitled.

■ In Gammill v. Culverhouse, 217 Ala. 65, 114 So. 800, 801, a similar question was presented and the court speaking through Mr. Justice Somerville observed:

"Since our decisions in the case of Citizens' Light, Heat & Power Co. v. Lee, 182 Ala. 561 (30), 581, 62 So. 199, the rule has been firmly settled in this state that the plaintiff is entitled, upon his seasonable and proper motion, to have the jurors from whom the trial jury is to be selected qualified as to their relation to, or interest in, any insurance company which would be liable, in whole or in part, for any judgment that might be rendered against the defendant. Beatty v. Palmer, 196 Ala. 67, 71 So. 422; United States Cast Iron, Pipe & Foundry Co. v. Warner, 198 Ala. 595, 73 So. 936."

■ In International Harvester Co. et al. v. Williams, 222 Ala. 589, 133 So. 270, 275, the court said:

"It is well settled that the parties plaintiff in civil actions, on proper and seasonable motion, are entitled to have the jurors, from whom the trial jury is to be selected, qualified as to their 'relation to, or interest in any insurance company which would be liable in whole or in part, for any judgment that might be rendered against the defendant,' and under our system of administering justice, the proper time and place for presenting such motion is in open court, and unless it appears that the conduct of counsel in presenting such motion is attended with circumstances calculated to prejudice the rights of the defendant, it cannot be made the basis for grounds for motion for new trial or error on appeal. Gammill v. Culverhouse, 217 Ala. 65, 114 So. 800; Cooper v. Auman, 219 Ala. 336, 122 So. 351.

"There is nothing in the record to warrant the conclusion that the conduct of counsel in requesting the court to qualify the jurors was attended with bad faith or that there was anything in his conduct from which prejudice to the defendants resulted. Cooper v. Auman, supra."

■ There was evidence which, if believed, warranted the jury in returning the verdict which it did return in this case and we are not able to affirm that the verdict is contrary to the great weight of the evidence. Southern R. Co. v. Kirsch, 150 Ala. 659, 43 So. 796; City of Mobile v. Reeves, 249 Ala. 488, 31 So.2d 688; Standard Oil of Kentucky v. Gunn, 234 Ala. 598 (601), 176 So. 332.

On cross examination the witness Abner Moody testified:

"A. I tried to come to a stop whenever I seen him coming in the road.

"Q. You saw him just ten feet ahead and put your foot on the brakes? A. I already had my foot on it.

"Q. Didn't put your foot on until you saw him? A. Until I saw the mules.

"Q. How far was that from him? A. I didn't see him until I got in 10 feet of him.

"Q. What prevented you from seeing him?

"Mr. Ball: I hate to be objecting, but he has been all over that.

"Mr. Johnston: No, he has never stated—

"The Court: Go ahead.

"Q. Why couldn't you see him—here was a public highway open to him? A. He came out from the lot running through them high weeds.

"Q. You mean this old 80 year old gentleman came running across the highway like a little boy?

"Mr. Ball: He didn't say that. We object to that.

"The Court: Yes, I don't think you should put words in the witness' mouth that he didn't say.

"Q. Did he come running across the highway?

"The Court: The witness testified to that twice; that he came running out of the lot.

"Q. How far did you go up to the right hand side of the highway after you cut to the right? A. Until I stopped.

"Q. How far was that? A. Two or three truck lengths I imagine.

"Q. That would be around 75 or 80 feet, is that right? A. I guess so.

"Q. Abner you remember the sheriff over there—Mr. Nicholas? A. Yes, sir.

"Q. You remember Mr. Melton, the State Law Enforcement Officer? A. No, sir.

"Q. The gentleman in uniform? A. No, sir.

"Q. The day after this thing occurred over here in jail did you tell those gentlemen this: 'On September 26, 1946, between the hours of 11:30 and 12:30 in the afternoon I was driving a truck for the Vredenburgh Saw Mill Company; just before I got to the home of Mr. John Deer, or about 60 or 80 feet before I reached Mr. Deer's home I noticed one mule come into the road from Mr. Deer's pasture going toward the lot.' Do you remember telling them that or not—Do you remember telling Mr. Nicholas, the Sheriff and the highway patrolman that? A. I disremember.

"Q. You remember talking—you remember them talking to you about it? A. I don't remember.

"Q. All right, did you tell them this; 'This mule was followed by another mule and then Mr. Deer'. Did you tell them that? A. I disremember that—that is the way the mules came out.

"Q. Did you tell Mr. Nicholas, the Sheriff of this County and the highway patrolman that?

"Mr. Ball: We object as not being a part of the res gestæ. This man is not a party defendant. That was not immediately afterwards—you are trying—attempting to prove a statement a considerable time after the accident.

"The Court: Overrule the objection.

"Mr. Ball: We except.

"Q. Did you tell them this: 'My brakes would not stop without first pumping them and I pumped my brakes and tried to put the truck in double low. I could not get in double low, but managed to get it in second', is that right—is that true? A.

"The Court: Answer the question; did you tell the Sheriff and the other party that?

"Mr. Ball: We have an objection to all of that?

"The Court: All right, I will give you an exception.

"Mr. Ball: We except * * *."

Thereafter the plaintiff introduced Sheriff Nicholas, who testified:

"Q. * * * Do you remember Mr. Melton with the State Highway Patrol have a conversation with Abner Moody while he was in jail here the day after this accident? A. Yes.

"Q. Do you remember him asking how the thing happened? A. Yes.

"Q. Do you remember that negro stating to him that his brakes would not hold without pumping and that he had tried to put the truck into low gear and didn't succeed in that and he had to put in (it) into second gear?

"Mr. Ball: We make the same objection to this line of questions of statements made by this driver after the accident—that was the day afterwards, as not being a part of the res gestæ. We would like to have an exception to each question.

"The Court: I will give you an exception to each question.

"A. Yes, sir, he said he pumped the brakes and tried to get in double low and got in second to try to stop it. * * *."

The witness Melton made the same answers to the above questions as did the sheriff.

■ The appellant insists that this testimony was erroneously admitted and the ground of objection is that such evidence to be admissible must be a part of the res gestæ of the transaction under investigation and subsequent statements after the fact, by an agent or servant, are not admissible against the principal or agent unless the statement is of the res gestæ of the occasion, citing as authority to sustain such position Couch v. Hutcherson, 243 Ala. 47, 8 So.2d 850, 141 A.L.R. 697. That case clearly holds that where a proper predicate has been laid by the plaintiff for the purpose of impeaching the testimony of a witness who has testified contrary to a previous statement, such testimony is admissible to impeach him. The court held in that case that the testimony was erroneously admitted because the predicate was not sufficient.

■ The only objection made to the admissibility of the above testimony was that it was not a part of the res gestæ. This objection was not well taken and the defendant having stated specific objections,

waived all others. Alabama G. S. Railroad Co. v. Bailey, 112 Ala. 167, 20 So. 313; Sharp v. Hall, 86 Ala. 110, 5 So. 497, 11 Am.St.Rep. 28. However, we hold in this case that the predicate was sufficient and that the court did not err in overruling the defendant's objection to the testimony and the same is true as to the testimony of the witness Melton.

It is well settled that the average witness does not have to have expert knowledge to testify to the speed of a vehicle in ordinary or common use. The fact that the witness McKinley had never driven a truck or automobile did not disqualify him from giving testimony as to the speed of the truck. The credibility of the testimony was for the jury.

The ruling of the court touching the question of the tracks made by the truck in the bed of the highway was free from error. Pope v. State, 174 Ala. 63, 76, 57 So. 245; White v. State, 12 Ala.App. 160, 68 So. 521, and authorities there cited.

We find no reversible error in the record and the judgment is due to be affirmed.

So ordered.

LIVINGSTON, SIMPSON, and STAKELY, JJ., concur.