86 So.2d 381

**J. F. COLQUETT et al.**

v.

**Jimmy D. WILLIAMS, pro aml.**

**4 Div. 844.**

Supreme Court of Alabama.

March 22, 1956.

Robt. B. Albritton, Albrittons & Rankin, Andalusia, for appellants.

Frank J. Tipler, Jr., Andalusia, for appellee.

**MERRILL, Justice.**

This is an appeal from a judgment of the Circuit Court of Covington County in the sum of $12,000 damages for personal injuries, which was rendered in favor of appellee, plaintiff below. The cause was submitted on motion to dismiss the appeal and on the merits.

#### On the motion.

Appellee moves that the transcript of the record be stricken because it was not filed in compliance with Rule 37, Revised Rules, which rule, as applicable here, provides:

" * * * the transcript of the record shall be filed in this court within sixty days after the transcript of the evidence has been established in the court below." The ground for appellee's motion is that the transcript of the evidence was filed on June 27, 1955 and more than 60 days elapsed before the transcript of the record was filed in this court on September 2, 1955.

On July 5, 1955, appellants filed objections to the transcript of the evidence and to the record. With the objections was a motion to correct the record by adding certain alleged omitted matter. On July 6th, the court ordered the clerk to include certain specified matter in the transcript, and on July 8th, ordered the court reporter to certify certain additional proceedings, and at the same time denied appellants' motion to have incorporated in the record the argument of appellee's counsel to the jury.

That part of the act which is listed in the 1953 cumulative pocket part, Code of Alabama 1940, as Title 7, § 827(1a) provides:

"The period of time within which the reporter must file the transcript may be extended by the trial court for cause. Within ten (10) days after the filing with the clerk of the certified transcript by the court reporter, either party may file with the clerk objections to the certified transcript, with his certificate that he has notified the opposing party, or attorney of record, that the same will be called to the attention of the trial court at a specified time and place. If no objections are filed within such ten (10) days the transcript shall be conclusively presumed to be correct. The hearing of objections and the ruling of the court thereon shall be concluded within a period of ninety (90) days from the date of the taking of the appeal, provided that this period may be extended by the trial court for cause. The trial court shall endorse its ruling on the transcript, sign the same, all within said ninety (90) days period, except as hereinbefore provided. Any ruling of the trial court upon such requested hearing, as well as any ruling on objections to a succinct statement, provided for in section 827(3) of this title, shall be reviewable, with error duly assigned by the dissatisfied party upon the appeal of the cause, and the evidence upon such hearing shall be duly certified by the court reporter."

The apparent effect of this section is to extend the time in which the transcript must be filed. There is no conflict

with Rule 37 because the transcript of the evidence was not *established* until the expiration of the ten day period, in which either party may interpose objections to the certified transcript. The transcript was not established until July 8, 1955 when the court ruled on the objections to the transcript of the evidence. The transcript of the record was filed in this court within sixty days after July 8; therefore appellee's motion to dismiss the appeal is without merit and is due to be, and is, denied.

### On the merits.

Appellants insist that their case was tried in disregard of a mandate of this court to the trial court. This contention arises out of the following facts. After one continuance had been granted appellants, the cause was set for trial on April 5, 1955. On March 24, 1955, appellants propounded interrogatories to the appellee and to one Hair, who was originally a codefendant, but was stricken as such by appellee on March 28, 1955. On March 31, 1955 appellants filed a petition in this court praying that this court issue a Rule Nisi or an alternative writ of mandamus directed to the Judge of the Circuit Court of Covington County commanding him to enter an order requiring the appellee and Hair to answer said interrogatories; or to appear and show cause why a peremptory writ of mandamus should not issue, etc., and for general relief.

This court granted the relief prayed for, and ordered all proceedings stayed pending compliance with the Rule Nisi. On April 2, the trial court ordered appellee and Hair to answer the interrogatories and they filed their answers on April 4th. The same day appellants filed a motion for a stay of proceedings and a motion to continue the cause. The grounds for each of these motions were that the mandate of the Supreme Court had not been complied with in that the answers to the interrogatories were not responsive, incomplete, evasive, and sought to inject matter prejudicial to the appellants. These motions were overruled. Appellants then filed motions to require appellee and Hair to make full answers to the interrogatories. The judge overruled this motion, stating that it was his opinion that the answers were full and complete, but did grant appellants' motions to strike certain answers or portions thereof.

■■ We have examined carefully the interrogatories in question and the answers filed in reply thereto. We concur in the opinion of the trial court that the answers given constituted a sufficient compliance with the order issued by this court. Whether the answers to the interrogatories were sufficiently full is a matter of discretion with the trial court, Roll v. Howell, 9 Ala. App. 171, 62 So. 463, and it is the general rule that matters resting in the sound discretion of the court will not be disturbed on appeal unless there has been a clear abuse of discretion, Ex parte Jonas, 186 Ala. 567, 64 So. 960. See Ex parte Nolen, 223 Ala. 213, 135 So. 337; Sovereign Camp, W. O. W. v. Ward, 201 Ala. 446, 78 So. 824. There was no abuse of discretion by the trial court in his ruling on appellants' motion.

We have examined all of appellants' argued assignments of error relating to matters and rulings occurring prior to the trial and find no reversible error.

A condensation of the essential facts for an understanding of how the accident occurred follow. Appellant Wishum was an employee of appellant Colquett. Wishum, while acting in the line and scope of his employment, was driving Colquett's oil truck along East Three Notch Street in Andalusia in a westerly direction in the lane of traffic at a low rate of speed. Herman Hair's automobile was parked parallel to the curb, also headed west. The appellee, 15 years of age, was riding his bicycle along the street between the parked cars and the line of traffic. He, too, was going west. Just as he came abreast of Hair's automobile, Hair opened the left front door and appellee was knocked off his bicycle in front of, or even with, the oncoming oil truck. The front wheel of the truck did not touch appellee but the rear wheel ran over and crushed his leg. Appellee was not far from the back end of the truck when it stopped. As already

stated, Hair had been dropped as a code-fendant prior to the trial.

Assignments of error 22 through 32 deal with rulings on admission of evidence relating to defendant's insurance coverage.

On cross examination of defendant Wish-um, the following occurred:

"Now Tom, who was the first person you ever gave a statement to about this?

"Mr. Albritton: We object.

"The Court: Overrule it.

"Mr. Albritton: We except.

"A. You mean a signed statement?

"Q. Yeah, a signed statement.

"A. I can't call his name right now —an insurance adjuster.

"Mr. Albritton: We move to exclude that answer, if the Court pleases.

"The Court: Overrule your motion.

"Mr. Albritton: We except."

■■ That part of the answer "an insurance adjuster" was not responsive to the question and the motion to exclude should have been sustained. Then on re-direct examination appellants brought out that the insurance adjuster was representing Hair's insurance company. This evidence tended to cure any prejudicial effect of the error in not excluding the unresponsive answer. But on recross the following transpired:

"Q. He asked about insurance. Did you give a statement to your insurance company?

"Mr. Albritton: We object.

"The Court: Overrule it.

"Mr. Albritton: We except. A. Did I give any statement to my insurance company? I don't believe I did. I don't remember.

"Mr. Albritton: We except and move to exclude it.

"The Court: Overrule it.

"Mr. Albritton: And we move the court for a mistrial for a manifest prejudicial error in this case.

"The Court: Overrule your motion.

"Mr. Albritton: We except.

"Q. Do you have that statement? A. No, sir.

"Q. Do you know who it has been turned over to? A. No, sir.

"Q. You know whether it is in Mr. Albritton's custody or not? A. No, sir.

"Q. But you did give a written statement you think to your insurance company?

"Mr. Albritton: We object again.

"The Court: Overrule it.

"Mr. Albritton: And we renew our motion for a mistrial for a manifest prejudicial error in this case.

"The Court: Overrule your motion.

"Mr. Albritton: We except."

The questions concerning *"your insurance company"* were highly improper and prejudicial and the objections to them should have been sustained.

■ Assignment of error 22 is that "the court erred in failing to sustain appellants' objection to the following statement made by counsel for the appellee in the presence of the jury: 'I haven't got a big company behind me' ". This remark was improper and had no connection with the issues, either directly or indirectly, and should have been excluded, but, we are unable to ascertain from the record whether the appellants' objection was addressed to opposing counsel or to the court, and the trial court definitely states that "there was no appeal to the court to exclude that statement, nor was there any objection made that was addressed to the court". Thus, under our rules, no reversible error was committed.

It is next urged by appellants that remarks, statements and arguments of counsel for appellee during the course of the trial with reference to the insurance coverage of appellants "were not only objectionable but were so grossly improper and highly prejudicial that their evil influence could not have been eradicated from the minds of the jury by any admonition from the trial judge, even if he had sustained appellants' several objections and attempted to do so". This contention is the basis of numerous assignments of error and is also urged as grounds in their motion for a new trial.

■ The following transpired after the court below finished qualifying the jurors generally:

"The Court: What says the Plaintiff?

"Mr. Tipler: I understand that Mr. Colquett and Mr. Wishum have liability insurance with the Travelers Insurance Company. I would like to have them qualified as to whether they are agents or employees of Travelers Insurance Company.

"Mr. Albritton: We except to that statement of Mr. Tipler and move for a continuance on the ground of that statement.

"The Court: Overrule it.

"Mr. Albritton: We except.

"Mr. Albritton: We move to quash the venire in this case on the ground of that statement made in the presence of the jury and the ex parte statement made by Mr. Tipler.

"The Court: Overrule it.

"Mr. Albritton: We except".

The court then proceeded to qualify the panel as requested, and, it might be added, one of the veniremen was an agent of Travelers Insurance Company.

The almost identical situation arose in Vredenburgh Saw Mill Co. v. Black, 251 Ala. 302, 37 So.2d 212, 218, and this court found "no reversible error in the record".

That case was followed in Wagnon v. Patterson, 260 Ala. 297, 70 So.2d 244. The assignments of error directed at the court's rulings in the qualification of the jurors are not well taken.

The arguments made to the jury by the attorneys were recorded on a tape recorder. These arguments were not transcribed into the record by court reporter, but certain portions are set out in the opinion of the trial judge in his judgment overruling the motion for a new trial, and other portions are included in the testimony taken on the motion. During the course of his argument to the jury, counsel for appellants concluded as follows:

"Gentlemen of the jury, all I ask you to do is place yourself in the driver's seat of that truck—place yourself in Tom Wishum's seat—and say what you would have done under similar circumstances, and when you do that, gentlemen of the jury, and you weigh this evidence according to your conscience and the law in the case you will reach the conclusion there is no way under high Heaven that you can render a verdict in favor of the plaintiff in this case, unless you are going to say that we are just going to take Tom Wishum's money and Buck Colquett's money, and out of a feeling of compassion, give it to the plaintiff. That is not the law in this country, gentlemen of the jury. It may be the law in Russia or some place like that, that you take one man's money from him and give it to another one out of sympathy, but it is not the law in this good old United States of America, thank God. A man is not supposed to be punished unless he has done something wrong. He is supposed to be able to retain his property and protect it against law suits unless he has done something wrong, that would justify you twelve men in saying that from the evidence that came from this witness stand, this man Tom Wishum has done something negligent and wrong, that a reasonably prudent man wouldn't have done under the circumstances, and therefore he

ought to pay for it as damages. Gentlemen, that is all I have to say. Thank you for your attention".

Counsel for appellee in reply, stated as follows:

"Didn't you hear Tom Wishum testify from that witness stand that his insurance company took a statement from him? Now, I ask you in view of his last statement, *whose money is the boy trying to get?*" (Emphasis supplied.)

Whereupon, the following colloquy took place:

"Mr. Albritton: We object to that argument if the court pleases and move to exclude it.

"The Court: Overrule it.

"Mr. Albritton: And we except.

"Mr. Tipler: I was replying to what he said.

"Mr. Albritton: We now renew our motion for a mistrial in this case.

"The Court: The Court is of the opinion that counsel was replying in kind. Go ahead."

The record further reveals that during his argument to the jury, counsel for appellants made the following remarks:

"Now gentlemen of the jury, I want you to place—each one of you to place yourselves in the position of Tom Wishum on that occasion. Because Terrill Kyzar, it could have been your feed truck coming down East 3–Notch at that time in that lane of traffic. Alf Douglas, it could have been a truck of yours coming down there in that lane of traffic at the time, or anyone of you gentlemen of the jury. Why it could have been either one of you, it could have been your truck in that lane of traffic, coming down there at a very slow rate of speed. No reason in the world to anticipate any thing was wrong, and you won't find anything unless you attempt to follow Mr. Tip-

·ler's quibble on words as to these statements which I will refer to later".

Also, during his argument to the jury, counsel for appellee said:

"Terrill Kyzar, suppose it was your truck. Suppose it was, Terrill, wouldn't you feel some sense of responsibility towards this child, *wouldn't you feel that the people you paid to protect you should take care of this child in some way?*" (Emphasis supplied.)

Whereupon the following transpired

"Mr. Albritton: If the Court pleases, we renew our objection to that manifestly prejudicial argument.

"The Court: What was it you said?

"Mr. Tipler: I was replying. He pointed to Terrill and said 'suppose it was your truck,' and I said, 'yes, suppose it was and what would you expect.'

"The Court: I exclude from your speech any personal reference to any juror and you should not under any circumstances make any personal reference to any juror. You speak to them as gentlemen of the jury and that is all, and that is excluded."

We are unable to agree with the contention of appellee that the above complained of arguments were proper replies in kind to arguments of counsel for appellants.

We are in accord with the opinion of the trial court that a logical inference to be drawn from the first quoted argument of counsel for appellants is an admonition to the jury "that by rendering a verdict for plaintiff they would be taking Tom Wishum's money and Buck Colquett's money out of a feeling of compassion." Pretermitting a consideration of the propriety vel non of these remarks or the inference logically drawn therefrom, we are still convinced that the statement of appellee's counsel was not proper reply in kind. The only logical inference we are able to deduce from his remarks is that appellee (the boy) is not

trying to get appellants' money, but the money of their insurance company.

As to the last quoted argument of counsel for appellee wherein he stated "* * * wouldn't you feel that the people you paid to protect you should take care of this child in some way", we think the import thereof too obvious to require amplification. True, the trial court excluded any personal reference to any juror and admonished counsel in that respect, but made no mention or exclusion of the highly prejudicial part of the statement quoted in the preceding sentence.

In the case of Standridge v. Martin, 203 Ala. 486, 84 So. 266, 267, it was said:

"In a later case this court declared that the trial court committed 'highly prejudicial error in the allowance of testimony to show, or tending to show, that defendant was indemnified in the premises, in any degree or fashion, by an insurance company,' and that 'the obligation of court and counsel to exhaust every reasonable means for the removal of all reasonably possible prejudice from the minds of the jury enhances as the subject of the illegal admission is apparently susceptible to subtle and sinister effect upon the discharge by the jury of the grave and supremely important duty committed to the jury.' Watson v. Adams, 187 Ala. 490, 498, 499, 65 So. 528, 530.

"In the Watson case it was ruled on appeal that the mere exclusion of illegal evidence of insurance indemnity would not suffice to remove the high prejudice of its wrongful admission. If that ruling was sound—and we think it was—it is clear that the mere exclusion of this statement of counsel, with the observation that it was improper, coupled with its conditional withdrawal by offending counsel, could not sufficiently remove the poison of the utterance.

"There can scarcely be made to a jury a more seductive and insidious suggestion than that a verdict for damages against the defendant before them will be visited, not upon that defendant, but upon some invisible corporation whose business it is to stand for and pay such damages. Such a suggestion, once lodged in the minds of the jury, is almost certain to stick in their consciousness, and to have its effect upon their verdict, regardless of any theoretical exclusion of it by the trial judge.

"In such cases the obvious, and indeed the only, remedy is to set aside the verdict and order another trial. See the excellent discussion of this subject, with a review of the authorities, by Crum, J., in Alabama Iron & Fuel Co. v. Benenante, 11 Ala.App. 644, 66 So. 942."

We are aware of the fact that the objections interposed by counsel for appellants failed to point out the particular portion of the argument to which they were addressed by quoting or giving the substance of the objectionable remarks, but we think this case falls within the rule stated in Anderson v. State, 209 Ala. 36, 95 So. 171, 179:

"An exception to the general rule requiring appropriate objection or motion invoking corrective instruction or action by the trial court is where the remark or argument of counsel is so grossly improper and highly prejudicial to the opposing party as that neither retraction nor rebuke by the trial court would have destroyed its sinister influence * * *." (Citing authorities.)

See also Watts v. Espy, 211 Ala. 502, 101 So. 106; Metropolitan Life Ins. Co. v. Carter, 212 Ala. 212, 102 So. 130; Prudential Ins. Co. v. Calvin, 227 Ala. 146, 148 So. 837.

It is our opinion that neither retraction nor rebuke would have destroyed the strongly prejudicial suggestions that it was an insurance company and not appellants who should and would have to pay for appellee's injuries. Thus, there is manifest error in the record and the motion for

a new trial should have been granted. It follows that the judgment should be reversed and the cause remanded.

Reversed and remanded.

LAWSON and GOODWYN, JJ., concur.

LIVINGSTON, C. J., concurs in the result but is of the opinion that the objections to the arguments in this case and the overruling of same, were sufficient for a reversal.