289 F.2d 209
 Lulu M. ROSS, as Administratrix of the Estate of Louis Carpenter, and Lulu M. Ross, as Administratrix of the Estate of Sylvia M. Carpenter, Appellants,
v.
Mary W. NEWSOME and Edwin Newsome, Appellees.
 No. 18601.
 United States Court of Appeals Fifth Circuit.
 April 18, 1961.
 
 John Maddox, Oscar M. Smith, Rome, Ga., Matthews, Maddox, Walton & Smith, Rome, Ga., of counsel, for appellants.
 A. Cecil Palmour, Summerville, Ga., Leland Randall, Oneonta, Ala., Cook & Palmour, Summerville, Ga., Johnson & Randall, Oneonta, Ala., for appellees.
 Before RIVES, BROWN and WISDOM, Circuit Judges.
 RIVES, Circuit Judge.
 
 
 1
 This appeal is from a judgment in favor of the defendants on their counter-claims for damages resulting from a collision at a highway intersection. On November 8, 1958, at about 10:30 o'clock A.M., in Blount County, Alabama, the Carpenters were proceeding south on U.S. Highway No. 231 in their Oldsmobile automobile, and Mrs. Newsome was driving her husband's Plymouth automobile west on U.S. Highway No. 278. At the intersection of the two highways, the automobiles collided. Four persons were killed — Mr. and Mrs. Carpenter, Nedra Newsome, the four-year-old daughter of the Newsomes, and Brenda Wilson, fourteen years of age, a passenger in the Newsome car.[1] Mrs. Newsome and her two-year-old son, Edwin Earl, were injured. The automobiles were virtually demolished.
 
 
 2
 Highway No. 231 ran generally north and south. It was a through highway with speed limit of 45 miles per hour within a distance of one mile from its intersection with Highway No. 278. The 45 m. p. h. speed zone was clearly marked. Highway No. 278 ran generally east and west, and had a large "stop" sign over it and on the side of it requiring traffic to stop before entering its intersection with Highway No. 231. Each highway had several signs along it warning of the intersection and its danger.
 
 
 3
 The weather was clear and the pavement dry. Visibility of vehicles approaching the intersection from the north on No. 231 and from the east on No. 278 was unimpeded except by one house. The testimony runs the entire gamut. Mrs. Newsome testified that she stopped and looked both ways before entering the intersection. Witnesses testified to seeing her slow down to 10 or 15 miles per hour, and that she could have stopped when their vision was obstructed. Other witnesses testified that Mrs. Newsome failed to stop or slow down but entered the intersection at a speed of from 35 to 80 m. p. h. The speed of the Newsome car at the time of the collision is variously estimated at from 10 m. p. h. to in excess of 40 m. p. h. The speed of the Carpenter automobile just before the collision is variously estimated at from 45 m. p. h. to 90 m. p. h.
 
 
 4
 The judgment on the jury's verdict was in favor of Mrs. Newsome for $10,000.00 for her injuries, and in favor of Mr. Newsome for $10,000.00 as damages for the death of his daughter, Nedra, and for $2,875.00 for compensatory damages for such things as medical expenses for his wife, loss of consortium, and damages to his automobile. The errors relied upon are thus set forth in appellants' brief:
 
 
 5
 "The trial court erred in:
 
 
 6
 "(a) Overruling and denying plaintiffs-appellants' motion for new trial;
 
 
 7
 "(b) Refusing to set aside the verdicts and judgments, which were against the weight of the evidence;
 
 
 8
 "(c) Refusing to set aside the verdict and judgment for the death of Nedra Newsome, which was excessive; and
 
 
 9
 "(d) Excluding the opinion of the Highway Patrolman as to the speed of the vehicles."
 
 
 10
 This Court's power to review the ruling of the district court on motion for new trial either on the sufficiency of the evidence or on claimed excessiveness of damages is extremely limited. See Whiteman v. Pitrie, 5 Cir., 1955, 220 F.2d 914, 918-920.
 
 
 11
 The Newsomes' counterclaims charged the driver of the Carpenter automobile both with simple negligence and with wanton misconduct. The jury could reasonably have believed from the evidence that, in the face of visible warnings of a dangerous intersection, and with little or no lookout for approaching traffic, the Carpenter automobile was driven through a 45 m. p. h. speed zone at a speed of from 80 to 90 m. p. h., and thus could have inferred that its driver was guilty of wanton misconduct. See Vredenburgh Saw Mill Co. v. Black, 1948, 251 Ala. 302, 37 So.2d 212, 214; Graham v. Werfel, 1934, 229 Ala. 385, 157 So. 201, 204; Ford v. Hankins, 1923, 209 Ala. 202, 96 So. 349, 352; Hood & Wheeler Furniture Co. v. Royal, 1917, 200 Ala. 607, 76 So. 965, 967. In the face of a general verdict for the Newsomes, we cannot assume that the jury did not find the driver of the Carpenter automobile guilty of wanton misconduct.
 
 
 12
 We need not discuss the evidence so vigorously urged that Mrs. Newsome was guilty of contributory negligence as a matter of law, for any contributory negligence on her part would not preclude a recovery for wantonness. See A. B. C. Truck Lines v. Kenemer, 1946, 247 Ala. 543, 25 So.2d 511, 517.
 
 
 13
 Damages for wrongful death in Alabama are punitive, described in the statute as "such damages as the jury may assess." Code of Alabama, 1940, Title 7, Sections 119, 123. The measure of the amount of a proper assessment is the degree of culpability causing the death. Louisville & N. R. Co. v. Cross, 1921, 205 Ala. 626, 88 So. 908, 910. Appellants urge that the Carpenters have already suffered the ultimate punishment, loss of their lives. Such loss, however, cannot be considered as damages for the death of little Nedra Newsome, since the statute now provides that the action and cause of action survive against the personal representative of a deceased tort feasor. Code of Alabama, 1940, Title 7, Section 150. Where the jury could find a degree of culpability amounting to wantonness, no Alabama case cited or known to us has held $10,000.00 damages for wrongful death to be excessive.
 
 
 14
 Mr. Hurst, the Alabama Highway Patrolman, had few facts upon which to base an opinion as to speed. He frankly testified that, "I couldn't swear to the speed. I just have an opinion." His recollection was that the Carpenter automobile left skid marks before the point of impact of 24 feet and that those left by the Newsome car were 15 feet. He fixed the point of impact as 5 feet north of the center line on Highway No. 278 and 4½ feet west of the center line on Highway No. 231. He testified that the Carpenter automobile was damaged on the left front, and the Newsome car on the right front in addition to the damages suffered by being stopped by a culvert, 66 or 67 feet from the point of impact. In sustaining objection to Mr. Hurst's opinion as to the speed of either of the two vehicles, the district court said:
 
 
 15
 "I think I will sustain the objection because he said previously he couldn't give an estimate of speed, and again, the facts upon which he purports to give it are not sufficient.
 
 
 16
 * * * * * *
 
 
 17
 "* * * There are too many factors that enter into the question of speed, and stopping time, whether the brakes were on, and the tires, the pavement, the weight, the speeds, all those factors."
 
 
 18
 The sufficiency of the facts to justify the formation of an opinion and the competency of the witness as an expert to express an opinion on speed were matters which addressed themselves to the sound discretion of the district court. Certainly that discretion was not abused in this case. We find no reversible error in the record, and the judgment is
 
 
 19
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The present action does not include a claim for Brenda's death