354 So.2d 1 (1977)
ROBINS ENGINEERING, INC., a corp.
v.
James E. COCKRELL.
SC 2439.
Supreme Court of Alabama.
December 22, 1977.
Rehearing Denied February 3, 1978.
Ollie L. Blan, Jr., and Alton B. Parker, Jr., of Spain, Gillon, Riley, Tate & Etheredge, Birmingham, for appellant.
Lanny S. Vines and Lydia Quarles, Birmingham, for appellee.
BLOODWORTH, Justice.
Defendant, Robins Engineering, Inc. (contractor), appeals from a jury verdict of $120,000 for plaintiff, James E. Cockrell (employee of subcontractor, Bay Steel Corporation). We reverse and remand because of the admission into evidence of an indemnity agreement between the contractor, Robins, and the subcontractor, Bay Steel.
On December 13, 1973, plaintiff was injured as a result of a fall which occurred when the scaffold, upon which he was standing, broke. Five minutes prior to the accident, Walter Cockrell, plaintiff's brother, who was foreman on the job, and the field superintendent for the subcontractor Bay Steel Corporation, Teddy Brasher, observed plaintiff on the scaffold. Brasher testified that he told Walter Cockrell, "That boy is going to kill himself." Walter then testified that he told his brother, James, "Boy, if that board breaks, I ain't got no dollar for you," which, in essence, was a warning to be careful. Shortly thereafter, plaintiff fell and was injured.
At the time of the accident, plaintiff was attempting to complete a portion of a parking deck in downtown Birmingham, which Robins had contracted with the Jefferson County Commission to construct. Plaintiff *2 was employed by Bay Steel Corporation which had the subcontract to do re-enforcing iron work. Defendant, United States Fidelity & Guaranty Company (U.S.F. & G), was Robins' insurer.
Plaintiff brought suit for personal injuries against Robins and U.S.F. & G. The case was tried to a jury. At the conclusion of the evidence, defendant U.S.F. & G.'s motion for directed verdict was granted, but Robins' motion for directed verdict was denied. Robins' motion for judgment notwithstanding the verdict or, alternatively, new trial, was overruled. Hence, this appeal.
Defendant Robins raises several contentions for reversal, including the contention that plaintiff's conduct amounted to contributory negligence as a matter of law. We pretermit that issue because we hold that reversible error was committed by the introduction into evidence of the indemnity agreement between Robins and Bay Steel.
The subcontract between the contractor Robins and the subcontractor Bay Steel was introduced into evidence by plaintiff over defendant Robins' objection. The insurance provisions were deleted on Robins' objection, but the indemnity agreement was allowed in evidence.
The indemnity clause is as follows:
"Indemnity Agreement: The Subcontractor covenants to indemnify and save harmless and exonerate the Contractor and the Owner of and from all liability, claims and demands for bodily injury and property damage arising out of the work undertaken by the Subcontractor, its employees, agents or its subcontractors, and arising out of any other operation no matter by whom performed for and on behalf of the Subcontractor, whether or not due in whole or in part to conditions, acts or omissions done or permitted by the Contractor or Owner."
Plaintiff's counsel brought up the "indemnity agreement" two times during closing argument, viz:
". . . it has been mentioned of this indemnity agreement, which I believe Mr. Brasher said he realized that they had. Ladies and gentlemen, that contract provides that if a judgment is rendered against Robins Engineering Company that under that contract Robins Engineering Company is going to turn around and go right after Bay Steel because they have got a provision in there that states that they can do that. The validity of that provision, I don't know, but I am sure that Mr. Brasher understands that provision and his employer, the man who he is second to in Bay Steel's operation understands that provision, and he knows that provision. And if they are passing it off to Bay Steel, and whatever he says on the stand consider Bay Steel's position with regard to this contract. [Italics supplied.]

* * * * * *
"The prime contractor, Robins Engineering, had the responsibility to see that this man had access to his work and see that he had safety equipment to do his work. And Mr. Brasher comes in and testifies that it is the custom and practice of the subs to provide safety devices and he testified that today, although he may not have known it then, that that contract between Bay Steel, his employer and the one he is employed by now, and Robins Engineering provides that anything that Robins had to pay they have got to pay them back. Consider that. Consider that." [Italics supplied.]
For what purpose did the plaintiff offer the indemnity agreement?
If it was offered for the purpose of showing that the contractor Robins would not have to pay any judgment because the indemnity agreement could be enforced against the subcontractor Bay Steel, did this not constitute an effort to show that the party sued is indemnified, i. e., "insured" from personal liability for damages? If so, it has long been the law in Alabama that it is prejudicial and reversible error to allow testimony to show, or tend to show, that a party is indemnified in any degree or fashion by an insurance company. Thorne v. Parrish, 265 Ala. 193, 90 So.2d 781 (1956); *3 Colquett v. Williams, 264 Ala. 214, 86 So.2d 381 (1956).
Moreover, if counsel emphasize the existence of insurance carried by the opponent covering the transaction, during argument to the jury, reversible error has been committed. Thorne v. Parrish, supra; Colquett v. Williams, supra, quoting, Standridge v. Martin, 203 Ala. 486, 84 So. 266 (1919).
But, plaintiff contends that the rule regarding "insurance" has no application to this case where an "indemnity agreement" is involved. Assuming, however, the applicability of this rule plaintiff then contends his comments were proper because the indemnity agreement was either relevant to the question of defendant's duty or was admissible to show defendant's bias. We cannot agree.

"Insurance. While the basic concepts are not identical and each has varied legal usages, indemnity and insurance have common elements. Fundamentally each involves contractual security against anticipated loss, and in each case there must be a risk of loss to which one party may be subjected by contingent or future events, and an assumption of it by legally binding arrangement by another. Thus it has been said that a contract of indemnity is one of insurance, under which the indemnitor undertakes to save the indemnitee against loss arising from an unknown or contingent event." (Footnotes omitted.)
42 C.J.S. Indemnity § 3, p. 566.
The terms of the "indemnity agreement," supra, make it plain that it serves a similar, if not identical, function to that of liability insurance, and, therefore, we think that the reasoning and holding of cases regarding remarks as to the existence of liability insurance are apropos in the context of this case.
We find no merit in plaintiff's argument that proof of the indemnity agreement was collateral to the fact of defendant's duty. Plaintiff relies heavily upon Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757 (1939), and Burnett v. Bledsoe, 276 Ala. 139, 159 So.2d 841 (1964), but both these cases are readily distinguishable. In Burnett, insurance was mentioned in "one isolated instance," whereas it was the subject of comment on three separate occasions in the case at bar. Second, objection to the question regarding insurance was sustained in Burnett, and thus the question was not answered; in the case at bar, by contrast, the objection was overruled and the witness answered the question. Third, the trial judge in Burnett, as in Moore-Handley, admonished the jury that insurance was to be considered for a limited purpose only. In Moore-Handley this court quoted the following with approval from Smith v. Baggett, 218 Ala. 227, 118 So. 283 (1928):
"`. . . It is unquestionably well settled that proof that a defendant had indemnity insurance is not admissible as an independent fact, but we have had cases where it is when collateral to other material facts or so associated with or interwoven as to be inseparable that it becomes admissible and can only be eradicated or neutralized as bearing upon the defendant's liability by a limitation upon the effect of such evidence.'"
Here, however, the trial judge gave no such limiting instructions.
Turning now to plaintiff's contention that proof of the indemnity agreement was admissible to show bias, again, the cases upon which plaintiff relies can be distinguished.
In Hinton & Sons v. Strahan, 266 Ala. 307, 96 So.2d 426 (1957), the witness undergoing questioning was employed by the insurance company and his bias would be apparent. Thus, it was held proper to cross-examine him as to his connection with the insurance company and to comment upon that connection during closing argument.
In Southern Railway Co. v. Bunnell, 138 Ala. 247, 36 So. 380 (1902), the witness was asked if he had been asked by his employer, the railway company, to give security or indemnity for this case. Here, again, if he had been asked to do so, his bias would have *4 been apparent. In the case at bar, however, Teddy Brasher was not asked whether he had personally been asked to give security or indemnity. Rather, he was asked if he knew that the contract provided that Bay Steel pay for any money that Robins had to pay out for injury. This line of questioning would not tend to show bias upon the part of Teddy Brasher and, therefore, was improper.
We recognize, of course, that the trial judge has much discretion with respect to remarks made in final argument by counsel and that the trial court will not be reversed unless that discretion is abused. Gilmer v. Salter, 285 Ala. 671, 235 So.2d 813 (1970). Here, however, we think there was an abuse of discretion. The effect of these repeated references to the indemnity agreement was such that defendant was prejudiced. This is particularly true where, as here, the trial judge gave no limiting instructions.
There is yet another reason why admission of the indemnity agreement was reversible error.
In our very recent decision, Gunter v. U. S. Fid. and Guar. Co., 340 So.2d 749 (Ala. 1977), a unanimous court held (per Faulkner, J.) that a general contractor, charged with active negligence in furnishing and maintaining a scaffold from which a young workman fell, could not have impleaded the subcontractor (employer of the workman) in the wrongful death action, nor could indemnity be sought from the subcontractor-employer (under an almost identical indemnity agreement as here) because of the latter's immunity under the Workman's Compensation Statute.
Therefore, if the contractor Robins cannot recover from the subcontractor Bay Steel under the indemnity agreement again we pose the inquiry: For what purpose was the indemnity agreement offered? Since we hold it to be inadmissible, we think the answer is obvious. Its introduction into evidence along with the two comments made in closing argument to the jury, constituted prejudicial error to reverse.
REVERSED AND REMANDED.
TORBERT, C. J., and FAULKNER and EMBRY, JJ., concur.
ALMON, J., concurs specially.
ALMON, Justice (concurring specially).
I concur because of Gunter v. U. S. Fid. & Guar. Co., 340 So.2d 749 (Ala.1977).