# Birmingham Nat. Bank v. Bradley.

*Action by indorsee against indorser to recover money paid on raised check.*

1. *Expert testimony.*—It is right, and in fact necessary that expert testimony should be subjected to every legitimate test in order to properly weigh it.

2. *Forgery; evidence; competency.*—An unsuccessful attempt by one person to forge a name or raise a check, is not competent evidence that another person did not succeed.

3. *Excluded evidence; improper conduct of counsel in reference thereto.* —After evidence has been excluded, counsel are not justified in persisting in propounding questions in reference thereto, in the presence of the jury, and such improper conduct demands the prompt interference of the court.

4. *Same; setting aside verdict.*—Whenever wrong or injurious impressions are sought to be made on the minds of the jury by improper arguments, or by improper questions of counsel, the verdict should be set aside on motion of the opposite party.

5. *Discussion of admissibility of evidence; withdrawal of jury; discretion of court.*—It is within the discretion of the court to have the jury retire from the court room so as not to hear the discussion in regard to the admissibility of evidence.

APPEAL from the Circuit Court of Jefferson.
Tried before Hon. J. J. BANKS.

MOUNTJOY & TOMLINSON, for appellant.

DAN GREEN, *contra.*

The facts sufficiently appear in the opinion.

[Birmingham Nat. Bank v. Bradley.]

COLEMAN, J.—On a former appeal of this cause, reported in 103 Ala. 109, we held that the real issue was whether the check indorsed by Bradley to the plaintiff bank, was genuine, or had been raised after its issuance by the drawer bank. Bradley being the payee in the check and endorser, and the person to whom the plaintiff paid the money, he warranted to the paying bank the genuineness of the check, both as to the drawer's signature and the amount of the check. The case was properly tried upon this issue. The drawer's signature was admitted. It was also admitted that the defendant endorsed the check to the plaintiff bank and received from it $4,000 in cash. The plaintiff's right to recover depended upon its sustaining the averment, that the check had been fraudulently raised.

Legal evidence is that which bears upon the issue. We think the court erred in permitting the defendant to introduce evidence, that the plaintiff "was out of business." It was wholly irrelevant and was calculated to impress the jury unfavorably towards the plaintiff.

The plaintiff introduced evidence to the effect that the original check was for two dollars and payable to James Fix, that it had been raised from two dollars to four thousand dollars, and the name of James Fix removed, and that of John G. Bradley, the defendant, substituted ; that the alteration was not in the handwriting of any officer or employé of the bank, and that that the alteration had been made without authority. The plaintiff introduced chemical experts who testified, that by the use of acids and gas, writings could be so thoroughly and skilfully taken out or removed, as to leave no discernible trace, and that the paper would present the same appearance to the eye or under microscopic examination, as if it had never been written upon. In rebuttal the defendant offered a number of cashiers of banks and others, who after testifying to their occupations, the length of time engaged in such business and extent of their opportunities to learn, were permitted by the court to testify as experts as to the genuineness of the check in question. The plaintiff objected to the competency of these witnesses on the ground, that it had not been shown that they were experts as to the effect of acids and gas upon writings. We are of opinion the court did not err in receiving their evidence. No wit-

[Birmingham Nat. Bank v. Bradley.]

ness had testified that the check in question had been subjected to acids or gas. There was the evidence of a witness to the alteration of the check as to the payee and amount, and there was evidence tending to show that such alteration could be so skilfully made, as to defy detection by an examination of the check, but whether the check had in fact been altered, was the very question in controversy and for the determination of the jury.

There were witnesses for the defense who testified as experts, that in their opinion they could detect a raised check, and who testified that in their opinion the check in question was genuine. It was the province of the jury to determine the truth of the controverted statements.

We are of opinion the court erred in refusing to allow the plaintiffs to cross-examine the expert witnesses of the defendant, as to the effect of acids on writing, and whether in their opinion the writing could be altered or removed by the use of such means so as to escape detection. The objection was sustained on the ground that these witnesses were not experts in the use and effect of acids on ink, and therefore incompetent to express an opinion. If the purpose had been to establish by these witnesses the effect of acids on ink, the objection would have been well taken. The purpose of the question, was to affect their testimony as to the genuineness of the check. These witnesses had testified as experts, that in their opinion the check had not been raised, that it was as originally drawn, and the defendant had the benefit of this testimony with the jury. The plaintiff had introduced expert evidence to show the effect of eureka acid No. 1 and 2 on commercial ink when used for writing, and that it could be easily obtained. If the witnesses for the defendant had stated that they knew nothing of the effect of acids on ink, their testimony as to the genuineness of the check and that it had not been altered, would have been considered in connection with the admission on their part that they had no knowledge or experience of the effect of acids on writings. It is right and in fact necessary that expert testimony be subjected to every legitimate test on cross-examination in order to properly weigh it.

We are of opinion the court erred in receiving in evidence what it called the Peter Lewis check offered by

the defendant. Here was a check foreign to the controversy, with which the plaintiff had experimented, and which had evident signs of having been altered. The court permitted the defendant to offer this check in evidence, against the objection of the plaintiff, to show that an alteration could not be made without detection. An unsuccessful effort by one person to forge a name or raise a check is not competent evidence, that another person did not succeed.

The court very properly excluded the evidence as to Redwine's embezzlement and conviction. There was not the slightest legal pretext for the admission of such evidence before the jury, and after the ruling of the court, excluding it, counsel for the defense were not justified in persisting in propounding questions to witnesses relative thereto in the presence of the jury, which were known to be in defiance of the ruling of the court. Wrong and injurious impressions intentionally made upon the minds of the jurors, by asking improper questions, or making an improper argument to the court in their presence, for the purpose of getting before them facts or statements, not admissible, and which have been ruled out, calculated to prejudice their judgment, demands the prompt interference of the court, and a verdict should not be allowed to stand obtained by such a practice. We will further add, that it was within the discretion of the court, to have the jury retire from the court room, so as not to hear the discussion in regard to the admissibility of evidence, and counsel have no right to insist, that the jury hear his questions, and that the court rule on the objection in their presence.

The court did not err in refusing the affirmative charge for the plaintiff. The burden was on the plaintiff to reasonably satisfy the jury that the check had been raised, and the credibility and weight to be given to the evidence, offered to establish the averment was with the jury, to be considered in connection with the counter evidence of the defendant.

We presume the first charge requested by the plaintiff was intended to meet the argument of counsel for the defendant, that Redwine, a bank official, perpetrated the fraud. There was no evidence before the jury which justified the argument, and the interference of the court should have been invoked at the time the unauthorized

statements were being made by counsel. It is not probable that the objection will occur on another trial.

There are a great many assignments of error, but all may be classified under three or four heads, and we believe the princles of law declared, cover them all.

Reversed and remanded.