133 So.2d 880

**Shirley Eugene GWIN**

v.

**Archie Calvin CHURCH.**

**6 Div. 325.**

Supreme Court of Alabama.

Sept. 14, 1961.

Rehearing Denied Nov. 2, 1961.

Dominick & Roberts, Tuscaloosa, and James L. Shores, Jr., and Donald L. Morris, Birmingham, for appellant.

Ralph Roger Williams and E. M. Ford, Jr., Tuscaloosa, for appellee.

COLEMAN, Justice.

The plaintiff, appellee, brought this action for damages for personal injury allegedly resulting from the negligence of defendant in driving his automobile into the automobile which plaintiff was driving on a public highway in Tuscaloosa County. Defendant filed pleas of recoupment seeking to recover for his own injuries and charging that the collision was caused by the negligence or wantonness of plaintiff. To the respective claims against them, the parties pleaded in short by consent the general issue with leave, etc., in the usual form. On the verdict of a jury, judgment was rendered in favor of plaintiff and defendant has appealed. The judgment overruling defend-ant's motion for new trial is assigned as error.

Defendant contends that he is entitled to a new trial for that the plaintiff repeatedly and improperly injected into the trial the fact that defendant was protected by insurance. The following excerpts from the record are substantially in chronological order. The numerals in parentheses indicate those instances where plaintiff's reference to insurance, as it appears to us, was clearly improper.

*One.* The record discloses that:

"(Counsel for the Plaintiff and counsel for the Defendant having both announced ready for trial, the attorneys for the defendant then gave to the trial Judge, out of the presence and hearing of the jury, a written memorandum showing Mutual Savings Fire and Auto Insurance Company as the indemnity or insurance carrier covering the risk involved in this law suit.)"

During qualification of the jury the following occurred:

"The Court: Are any of you officers, agents, servants, employees, stockholders or policyholders in the Mutual Savings Fire and Auto Insurance Company, a mutual company? If so, stand up. (None of the Jurors stood up.)

"Mr. E. L. Bolton: (A Juror) Pardon me, what was that question?

"The Court: Are any of you officers, agents, servants, employees, stockholders or policyholders in Mutual Savings Fire and Auto Insurance Company, a mutual company? If so, stand up. (None of the Jurors stood up.)

"The Court: Any other questions for the Plaintiff?

(1) "Mr. Ford: We would like to know if any of the Jurors hold policies or stock in Mutual Savings Fire and Auto Insurance Company, a subsidiary of the Farm Bureau Insurance Company?

"The Court: I have just asked them concerning the Mutual Savings Fire and Auto Insurance Company?

(2) "Mr. Ford: We would like to know whether any of them have policies or stock of Mutual Savings Fire and Auto Insurance Company, a subsidiary of Farm Bureau or Farm Bureau itself?

"The Court: Do any of you—Are you officers, agents, servants or employees—

"Mr. Dominick: We object to that question.

"The Court: Sustain the objection, and I will not ask that question unless a different showing is made. Any other questions for the Plaintiff?"

So far as this record discloses, neither the Farm Bureau Insurance Company nor Farm Bureau itself had any connection with this case. No reason has been shown for making this inquiry, either to determine the qualification of jurors or to inform plaintiff of possible bias so that plaintiff could intelligently exercise his right to strike.

*Two.* On further examination of the jurors, the plaintiff propounded a question to which defendant objected as shown by the following excerpt from the record:

"Mr. Williams: We would like to ask whether any members of the jury have a fixed opinion against finding a verdict against a Defendant that is covered by liability insurance.

"Mr. Shores: We object to that.

"The Court: Sustained.

"Mr. Shores: We move for a mistrial.

"The Court: Overruled.

"Mr. Shores: Except."

*Three.* On cross-examination of plaintiff, counsel for defendant exhibited to plaintiff and placed in evidence a written statement bearing plaintiff's signature. Plaintiff admitted that when he was in the hospital, he had made the statement to Mr. John Rutledge. On redirect examination of plaintiff the following occurred:

"Q. At the time Mr. John Rutledge came in there, did he tell you what his job was? A. He told me he was an insurance adjuster.

"Q. Did he tell you he was the insurance adjuster for the Mutual Savings Fire and Insurance Co.? A. He told me he was an insurance adjuster.

"Q. Did he tell you he was representing Mr. Guin and his insurance company? A. Yes, sir.

"Q. At the time you gave that statement, did Mr. John Rutledge offer to give you a copy of it? A. No, sir, I asked him for one. He said no dice.

"Q. Is that your handwriting? A. No.

"Q. Whose handwriting is it, if you know? A. It is the man that said he was Mr. Rutledge.

"Q. Have you ever seen John Rutledge before in your life? A. No, sir.

"Q. Did you ask Mr. John Rutledge to give you a copy of that statement? A. Yes, sir, I wrote him a letter to send me a copy.

"Mr. Dominick: We object.

"The Court: Sustained.

"Q. At the time you gave him the statement, did you ask him for a copy of it? A. Yes, sir, I am pretty sure I did.

"Q. What did he tell you?

"Mr. Dominick: We object. He said he was pretty sure.

"A. I was in the hospital. It is pretty hard to remember every little detail.

"Q. I know it is, but you must be certain.

"The Court: You can state what your best recollection is. Sustain the objection to it.

"Q. Did you ask Mr. John Rutledge for a copy of your statement that he took in the hospital while you were flat of your back? A. Yes, sir.

"Q. Did he give you one? A. No, sir.

"Q. Did you, subsequent thereto in writing, request—

"Mr. Shores: We object.

"Mr. Ford: Let me finish the question.

(3) "Q. Did you, subsequently, in writing, on July 27, 1957, by letter in your own handwriting, ask the Mutual Insurance Company of Birmingham, Alabama to furnish you a copy of your statement?

"Mr. Shores: We object.

"The Court: Sustained.

"Mr. Ford: Your Honor, we offer to show that he did make such statement.

"Mr. Shores: We object; and ask for a mistrial.

"The Court: He has a right to make his offer to show, but I sustain the objection.

"Mr. Shores: We move for a mistrial.

"The Court: Overruled.

"Mr. Ford: I would like to show such request was made.

"Mr. Shores: We object.

(4) "Mr. Ford: We offer to show such a request was made of the Mutual Fire Insurance Company, and that request was denied.

"Mr. Shores: We object. ⠂⠂ ⠄⠂ ⠄

"The Witness: This man by the insurance company—

"Mr. Shores: We object.

"The Witness: I'm not under the—

"Mr. Dominick: We object; it is highly prejudicial and is just trying to inject features in there that have no right in the case.

"The Court: Sustain the objection to the question and overrule the motion for a mistrial.

"Mr. Shores: Except.

"Q. Did you ever get a copy of this statement? A. No, sir.

"Q. Have you ever gotten one? A. No, sir.

"Q. Have you ever seen this statement from the time it was taken at Lloyd Noland Hospital until today?

"Mr. Shores: We object. That is leading.

"The Court: Sustain the objection.

"Q. Have you ever seen this statement since the day it was taken from you by a man who stated he was Mr. John Rutledge until today?

"Mr. Shores: We object.

"A. No, sir.

"The Court: Overruled.

"Q. Did you make this statement in good faith? A. Yes, sir.

"Q. Did Mr. Rutledge hold out any hope of reward to you, any payment of hospital and doctor bills or anything else in order to get you to make this statement?

"Mr. Shores: We object.

"The Court: Sustain the objection.

"Q. I will ask you, at the time this statement was taken from you in the

Lloyd Noland Hospital, if Mr. John Rutledge, at that time and at that place, offered you any hope of remuneration if you would give him a statement such as he took? A. He told me not to worry about it. I said who is going to pay my hospital bill, and he said I wouldn't worry about it.

"Q. That is Mr. John Rutledge, the insurance adjuster for the Mutual Savings and Insurance Company? A. Yes, sir."

*Four.* On recross and further redirect examination of plaintiff the following appears:

On recross.

"Q. Did Hayes Aircraft—At Hayes Aircraft, did you have any hospital insurance to pay your hospital bill and doctor bill? A. They have a group insurance that paid some of it.

"Q. They have a group insurance that paid some of it. A. Yes, sir.

"Q. Did you have Blue Cross Insurance? A. No, sir, it is something like Blue Cross; I don't remember the name right off.

"Q. Did it pay Druid City Hospital? A. I am pretty sure it did.

"Q. Did it pay Lloyd Noland Hospital bill in Birmingham? A. No, sir.

"Q. How much did it pay, if you know? A. I don't know off-hand. They have the bill here; you can check it and see.

"Q. Does the bill say how much is paid for? A. I don't know whether it does or not.

"Q. Have you gotten a bill at all showing how much more you owe, if anything? A. Yes, I have, but I don't have it with me.

"Q. In your best recollection, how much is that? A. The bill?

"Q. Yes, sir. A. I would say the bill is around $600.00.

"Q. What about the doctor bill? Did it pay the doctor bill? A. No, sir, not all of it.

"Q. You testified what those bills were. Please, tell us, in your best recollection, how much the balance is still owed on the doctor? A. Well, at the two hospitals, I believe the doctor goes in with the hospital. I don't know exactly. Whatever was paid was paid in on the whole bill. I don't know exactly what my balance is.

"Q. You say you believe it is around $600.00? A. It could be around $700.-00. I don't remember exactly.

"Redirect Examination

"By Mr. Ford:

(5) "Q. Mr. Church, I want to ask you did the defendant or Mutual Savings Fire Insurance Company pay any of the premiums?

"Mr. Dominick: We object.

"Q. (Continuing) On your group insurance which paid part of these hospital and doctor bills?

"Mr. Dominick: We object.

"The Court: Sustained.

"Q. Who paid the premiums on your policy? A. Hayes Aircraft.

"Q. Who do you work for? A. Hayes Aircraft."

*Five.* The plaintiff's witness, Bernholz, had been a passenger in plaintiff's automobile at the time of collision. During and shortly before the end of the direct examination of Bernholz, the court recessed. During this recess, out of the presence of the jury, the record discloses the following colloquy between court and defendant's counsel:

"Mr. Dominick: Judge, we are going to question this man on a statement that

he made that was given to an investigator on cross examination of Mr. Bernholz, and we move the Court that you instruct the attorneys for the plaintiff against mentioning the insurance and insurance company in the presence of the jury on their questioning or any objections as they did yesterday.

"The Court: I will overrule the motion. The Court will pass on the questions as they come up in court. If it is shown that the man that took his statement was employed by an insurance company, that would be sufficient interest in the Court's view to examine the matter at the time the question arises, and the Court cannot anticipate this far ahead what ruling the Court will make. The Court will endeavor to protect the defendant *so far as* possible as to the question of insurance, but if it is shown that the man who took a statement was employed by an insurance company interested in this suit that would be enough interest to justify cross examination on that point.

"Mr. Dominick: We except to the Court's ruling."

Cross-examination of Bernholz followed shortly thereafter, and during that cross-examination, defendant questioned Bernholz touching a statement he had given to Mr. Rutledge. Defendant introduced the statement in evidence and the following occurred:

"Mr. Ford: May it please the Court, I would like a little time. This is the first time we have seen any of these statements. They have had them in their files.

"Mr. Dominick: Do you know we have had them?

(6) "Mr. Ford: The insurance company or somebody had them.

"Mr. Dominick: We move for a mistrial; that is highly prejudicial.

"The Court: Overruled.

"Mr. Dominick: Except.

"The Court: The Court excludes any statement made by plaintiff's attorney as to where the statement had been since taken. Gentlemen, you will not consider any such statement where it has been made or where the paper has been since it was signed or taken."

*Six.* Defendant undertook to show that after plaintiff left the hospital plaintiff had visited defendant at his home, and that plaintiff, on that occasion, had told defendant that if defendant would say his lights were off, defendant would receive money. On cross-examination of plaintiff, the record discloses the following:

"Q. Did you make the statement to Mr. Guin that if he would say his lights were off, and he turned on his lights just before the accident that it would mean some money to him? A. No, sir.

"Q. Did you make any statement like that to him whatsoever, or for him to state his lights were off and he turned them on? A. No, sir.

"Q. Did he tell you his lights were on all the time? A. I don't remember whether he said they were or wasn't. I asked him, but I don't remember what he said.

"Q. You asked him what? A. I asked him why he was on my side of the road, and why his lights were off.

"Q. You asked him why he was on your side of the road and why his lights were off? A. That is right.

"Q. You didn't make the statement to him, if he would state he had his lights off but that he turned them on just before the accident it would mean some money to him? A. I don't have any money, why should I say that?

"Q. Did you make that statement? A. No.";

and on redirect examination of plaintiff:

"Q. Did you offer him any money?
A. No, sir, I ain't got no money to offer him."

On redirect examination of defendant, the following occurred:

"Q. Let me ask you this, did Mr. Church tell you on the occasion when he visited at your home, if you would say your lights were off or something, it would mean a thousand dollars to you?

"Mr. Ford: We object.

"The Court: Overruled.

"A. Yes, sir.

"Mr. Ford: Except."

On recross examination of defendant, the following appears in the record:

"Q. Was this offer, as you stated that Mr. Church made to you, was that made in the presence of anyone? A. Yes, sir.

"Q. In whose presence? A. His cousins.

"Q. His cousins presence? A. That is right.

"Q. Did he offer you $1,000.00? A. He said I will guarantee a $1,000.00.

"Q. Did he tell you where he was going to get it from? A. Yes, sir.

"Q. Where? A. Insurance Company.

"Q. What insurance company? A. Mine.

"Q. Your insurance company? A. That is right.

"Q. Alright, sir, how was he going to get it out of your insurance company? A. If I would say my lights went out and I was coming down the road without lights and hit him, apparently, he would collect it.

*    *    *    *    *    *

(7) "Q. Did you know at the time he was supposed to have asked you to make the statement that you turned your lights on in his eyes that he had already given the insurance adjuster for your company a statement which was offered in evidence as Exhibit 4?

"Mr. Shores: We object.

"The Court: Sustained.

(8) "Q. I will ask you if at that time that you said such an offer was made if you had given a statement to your insurance company?

"Mr. Shores: We object.

"The Court: Sustained."

■ The rule is firmly settled in this state that the plaintiff is entitled, upon his seasonable and proper motion, to have the jurors qualified as to their relation to, or interest in, any insurance company which would be liable, in whole or in part, for any judgment that might be rendered against the defendant. Citizens' Light, Heat & Power Co. v. Lee, 182 Ala. 561, 62 So. 199; Vredenburgh Saw Mill Co. v. Black, 251 Ala. 302, 37 So.2d 212; Code 1940, Title 30, § 55, as amended by Act No. 260, 1955 Acts, page 605. On the other hand, counsel should be careful to avoid saying or doing anything which would lead the jury to believe that his opponent has insurance to protect him in respect to the matter in controversy when reference to insurance is not admissible for any proper purpose, Pearson v. Birmingham Transit Company, 264 Ala. 350, 87 So.2d 857; and

"* * * if counsel voluntarily and without legal right injects into the case the fact of insurance carried by his opponent it may be the cause for granting a new trial, although no motion or objection was made as to it at the time of its occurrence. To insist upon and argue such a matter at that time would tend to magnify the fact in the estimation of the jury. It would therefore seem appropriate to wait and

make a motion for a new trial if the verdict is adverse and have that as one of the grounds. That would justify a consideration of the question on its merits as to whether it was injected into the trial without any necessity therefor and voluntarily by counsel in order to prejudice the case against the defendant. In determining that question the whole situation must be considered in order to find whether counsel has voluntarily injected into the case matter which is prejudicial and ineradicable, and which was improper to be done under the circumstances. We cite a number of recent cases which state principles of law material to this situation: Clark v. Hudson, 265 Ala. 630, 93 So.2d 138; Colquett v. Williams, 264 Ala. 214, 86 So.2d 381; Pearson v. Birmingham Transit Co., 264 Ala. 350, 87 So.2d 857; Hudson v. Stripling, 261 Ala. 196, 73 So.2d 514; Wagnon v. Patterson, 260 Ala. 297, 70 So.2d 244; Vredenburgh Saw Mill Co. v. Black, 251 Ala. 302, 37 So.2d 212." Parker v. Williams, 267 Ala. 12, 15, 99 So.2d 210, 212.

■ In the case at bar, the matter of defendant's insurance was brought to the attention of the jury on a number of occasions wherein plaintiff cannot correctly be charged with making improper reference to insurance. There are also, however, other instances where in our opinion plaintiff's reference to insurance was improper, to wit; (1) and (2) reference on voir dire to the Farm Bureau Insurance Company; (3) asking plaintiff did he, by letter, ask the Mutual Insurance Company of Birmingham for a copy of his statement and (4) subsequent offer to show that plaintiff made such request; (5) asking plaintiff if Mutual Savings Fire Insurance Company paid any premiums on plaintiff's hospital insurance; (6) stating that the "insurance company" had the statement made by Bernholz; (7) asking defendant if he knew that plaintiff had given a statement to "the insurance adjuster for your company"; and (8) asking defendant if he had given a statement "to your insurance company." Without discussing each instance in detail, we think it is clear that the eight instances last noted were improper references to defendant's insurance or insurer.

We are not to be understood as holding that all the references to insurance made by plaintiff, other than the eight we have specifically noted, were proper. We have merely noted the eight instances which we think were patently improper. There may be others, which we have not specifically noted, which also were improper.

Appellee's argument is summarized, as we understand it, in the following excerpts from his brief:

"The voir dire questions here objected to were (1) not put to the jury, although technically heard by it, (2) they were cumulative in effect, and (3) they were proper under Title 30, Sec. 52, of the Code of Alabama 1940.

"During the examination of witnesses, appellant volunteered the information that he carried insurance (Tr. pp. 308–309). On other instances, the word 'insurance' also was used during the examination of witnesses. *Never was it mentioned without an objection being sustained, where such objection was made by appellant's counsel.* And never was it mentioned without the stage having been set by appellant's counsel. * * *"

■ While we do not agree that defendant set the stage for all of plaintiff's references to insurance, defendant did set the stage, so to speak, in certain instances, and defendant himself testified that plaintiff told defendant that the $1,000 would be paid by defendant's insurance company. We think plaintiff was within his rights in bringing out all of the conversation relating to the $1,000 offer because defendant had brought out part of that conversation. So the question for decision becomes one of deciding whether the

improper references to insurance, considered together with references which were not improper, are so prejudicial as to require a new trial.

After careful consideration of the entire record, we are of opinion that the improper references to insurance made by plaintiff require a new trial in this case. It might be that any one, or even two, of the eight instances noted, would not, standing alone, require a new trial, but we cannot conclude other than that the repeated, improper references to insurance again and again, eight times, unduly emphasized to the jury the fact that a verdict against defendant would be paid, not by defendant, but by his insurer. The cumulative effect of this repetition deprived defendant of a trial free from the prejudicial effect of improper reference to insurance.

Comprehensive annotations on the question here involved appear in: 56 A.L.R. 1418; 74 A.L.R. 849; 95 A.L.R. 388; 105 A.L.R. 1319; and 4 A.L.R.2d 761. The last annotation states:

"* * * While the courts still are careful to prevent unwarranted injection of the liability insurance factor, the more recent cases indicate less of a tendency to regard error in this regard as beyond cure by proper action of the trial judge." 4 A.L.R.2d 761, 764.

Nonetheless, we are of opinion that the more recent cases in this jurisdiction require a new trial in the instant case. Colquett v. Williams, 264 Ala. 214, 86 So.2d 381; Thorne v. Parrish, 265 Ala. 193, 90 So.2d 781.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.

## On Rehearing.

COLEMAN, Justice.

Appellee says that on original deliverance we erred in interpretation of well-settled principles of law and that the cases we cited do not support the decision. It may be that the reason for reversal is not clearly spelled out in the original opinion. To eliminate doubt, we state the applicable rule as follows:

"It is the generally accepted rule that it will constitute grounds for a new trial if counsel, in disregard of the court's ruling that a certain line of evidence is inadmissible, persists in attempting to get such evidence before the jury to the prejudice of the unsuccessful party. * * *

* * * * * *

" 'Where an incompetent question is asked, opposing counsel must either permit it to be answered or enter his objection; and, although the trial court refuses to permit the question to be answered, the very fact that the same question in a different form is repeatedly asked, and a vigorous objection interposed to its answer, emphasizes its importance in the minds of the jury, and necessarily prejudices the case, and for this reason, if for no other, where this practice is pursued to the extent indicated in the record in this case, the judgment should be reversed.' " Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 228, 229, 128 So. 389, 392.

In the instant case, plaintiff's counsel repeatedly asked questions which suggested that defendant had insurance to cover his liability in this case, and in each instance where defendant objected to the question, the objection was sustained. The action of the court in ruling against plaintiff, repeatedly, could but serve to warn him that his references to insurance were improper.

Louisville & Nashville R. Co. v. Payne, 133 Ky. 539, 118 S.W. 352, 19 Ann.Cas. 294, quoted in Birmingham Baptist Hospital v. Blackwell, supra. See also: Birmingham National Bank v. Bradley, 108 Ala. 205, 19 So. 791; Birmingham Electric Company v. Ryder, 225 Ala. 369, 144 So. 18; City of Birmingham v. Williams, 231 Ala. 232, 164 So. 101; Porter Coal Company v. Davis, 231 Ala. 359, 165 So. 93; Alabama Coca-Cola Bottling Company v. Stanfield, 234 Ala. 44, 173 So. 392; Travis v. Hubbard, 267 Ala. 670, 104 So.2d 712.

Opinion extended.

Application overruled.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.