161 So.2d 801

Lloyd E. CLAYTON

v.

Duke B. RAGSDALE.

6 Div. 892.

Court of Appeals of Alabama.

May 14, 1963.

Rehearing Denied Nov. 19, 1963.

Hare, Wynn, Newell & Newton, Birmingham, for appellant.

London, Yancey, Clark & Allen, Birmingham, for appellee.

PRICE, Presiding Judge.

The plaintiff, Lloyd E. Clayton, brought suit for personal injuries sustained in an automobile accident on January 31, 1958, when the automobile in which he was riding was struck from the rear by a truck which was driven by the defendant, Duke B. Ragsdale.

There was a verdict for plaintiff for $200.00. Plaintiff's motion for a new trial was overruled, and he appeals.

The plaintiff was riding as a passenger in an automobile being driven by Ernest W. Weir. Mr. Weir had stopped at the intersection of 20th Street and 2nd Avenue North, in Birmingham, for a red light, when, without warning, defendant's truck ran into the car from the rear and knocked it across the pedestrian traffic lane, which is approximately 10 feet wide. Mr. Ragsdale, the defendant, admitted to Mr. Weir, in plaintiff's presence, that he had been look-

ing away and failed to see the automobile, until it was too late, and (according to Mr. Weir) "he pulled a card out and wrote on the back of it the name of his insurance company, liability insurance company, and stated that whatever damage there was that his insurance company would take care of it, and for me to call the name he had written on there." There was only slight damage to Mr. Weir's automobile and he never bothered to have it repaired.

Plaintiff's evidence tended to show that the sudden and unexpected blow from the rear knocked plaintiff forward up against the dashboard and produced a cervical sprain or "whiplash" type injury to his neck; that Dr. Pfeiffer's bill was $120.00 covering 18 or 19 visits over a period of 60 days; that Dr. Pfeiffer referred plaintiff to Dr. Nicholson, an Orthopedist, for treatment and Dr. Nicholson's bill amounted to $830.00.

The plaintiff argues that the doctor's bills alone thus totalled $950.00 as against the verdict for $200.00, and that the evidence showed pain and mental anguish and lost income.

It was defendant's theory and insistence that plaintiff, who was an attorney, lost very little time from his practice in taking treatments; that his physical activity was not restricted by the injury; that there were no lacerations or broken bones, and no permanent injuries; that the plaintiff was "over treated" by the physicians, who are plaintiff's personal friends and whom he represents in collection matters, and there was no necessity for the numerous visits made to them.

The appellant's counsel argues that the court should have granted plaintiff's motion for a new trial because the verdict awarded him was so inadequate as to show that it was prompted by misconduct on the part of defense counsel both in the course of trial and during argument to the jury.

During defense counsel's argument to the jury, the following occurred:

"MR. CLARK: He (plaintiff) says he paid these bills or incurred all this expense. It is in evidence on June 2, 1959, the State Farm Mutual paid $500.00. * * * I submit that is why he was going to the Doctor and incurring all of these medical expenses, because the medical payments on Mr. Weir's automobile were taking care of the payments.

"MR. HARE: There is a notation on the back of a card which is clipped to another card, which I hadn't seen, because it is clipped to the back of another card. It contains the statement, '6-2-59, State Farm Mutual paid $500.00.' * * * There is no evidence that it was medical insurance on one man's car or on another man's car, just that bare notation. I object to it being argued. He is arguing it is medical coverage on the car."

"THE COURT: There is no evidence about what it is or where it came from or what it is based upon.

"MR. CLARK: I am allowed to argue any inference that can be drawn from it. If it is not sound the jury will not consider it.

"THE COURT: I believe I will overrule. Go ahead.

"MR. HARE: We except.

"MR. CLARK: I don't know what it means. I can only deal in inferences on a thing like that, but there it is, that the State Farm Mutual paid $500.00 on his medical expense. I do know that medical coverage takes care of the medical expense of a passenger in an automobile.

"MR. HARE: I object to that.

"THE COURT: There is no evidence about what you have read.

"MR. CLARK: It may be some of you know that; I don't know.

"MR. HARE: I object to that. That is improper argument. That is bringing insurance into the case, and it has got nothing to do with it one way or the other.

"MR. CLARK: I will say this, the State Farm Mutual paying $500.00 mystifies me in this case, as several other things do, how a man can go in two years one hundred and fifty times to a doctor with no more objective symptoms than he has. He says it took from two hours to three hours. I have had some pretty long waits in a doctor's room.

"MR. HARE: I object to that.

"MR. CLARK: I said I had spent some pretty long waits.

"MR. HARE: I object to that.

"THE COURT: I don't believe you would be allowed to state you had waited or what your experience had been. I will exclude that."

There is nothing in the record which tends to explain the presence of the card from which defendant's counsel read the notation concerning the payment of $500.00 by State Farm Mutual. The court itself said, although objection to the argument was overruled, that there was no evidence as to where it came from. In brief plaintiff's counsel says it was a part of Dr. Nicholson's file which was marked Exhibit D for identification only and was never received in evidence. We cannot agree with defense counsel's insistence that a logical inference to be drawn from the notation on the card was that Mr. Weir's insurance carrier had paid this sum on plaintiff's medical expenses. Nor do we agree with appellee's contention that the complained of argument was a reply in kind to the arguments of counsel for appellant:

"If there were any defense to the case these gentlemen would know what it is and would have made it. There is only one question, and that is this, and I give you my word this is no histrionic by me in my argument about the proposition of a man who would come here and call a brother lawyer, * * * what has been said about my client, Mr. Clayton, and offer not one scintilla of evidence to support it. * * * The honor of a lawyer, the truthfulness of a lawyer and the decency of a lawyer is the same as the honor, truthfulness and decency of any other man's. My understanding of values has not sunk to the level where, if your boy decides to go to college and study law, he exposes himself to the proposition I might get high and run him down like a dog, and then when he comes to Court say, 'don't believe anything he says, because he is a lawyer,' and because this man (defendant)—I haven't heard him speak; I don't know what he would say. That man handed a card to Mr. Weir and said, 'This is the name of my liability insurance company and I will have them to pay you. That is supposed to have so stimulated the satiety * * * of my client, a lawyer, that he would come here and fake an injury and build up an injury. I say to you he wants this case tried just the same as if there were no defendant except that man sitting there and he didn't have but one cent in the world."

In Smith v. Baggett, 218 Ala. 227, 118 So. 283, the defendant said to plaintiff when approached about fixing the car, "Let it stay over there and I'll see the insurance man; send him over here to look at it and then he would have it moved off and have it fixed." The court said that it was not prepared to hold this evidence was improper, but even if it was, it was admitted without objection and counsel had the right in argument to comment upon the same.

In Hunt v. Ward, 262 Ala. 379, 79 So.2d 20, the court was dealing with evidence of

statements to plaintiff that the collision was defendant's fault and he wanted his insurance company to pay for it. The court said that the statements included admissions against interest in accepting the blame for the collision, and stated that it was not prepared to hold that the proposed evidence was improper, but, if so, objection being sustained, the question was not sufficient to require a mistrial or a new trial.

In the instant case counsel's motion to exclude Mr. Weir's testimony with reference to defendant's statement that his insurance company would pay the damages, was overruled. Objection to the argument of plaintiff's counsel, excerpted above, was also overruled.

■ There is no necessity for an expression of our views as to the propriety or impropriety of the admission of evidence of the fact of defendant's insurance or the overruling of objection to plaintiff's argument, for even if the court's rulings in this respect were erroneous, we think this fact did not entitle defendant's counsel to argue as fact that which was not in evidence, i..e., that Mr. Weir's insurance carrier had paid plaintiff's medical bills to the extent of $500.00. Counsel may comment on all proper inferences to be drawn from the evidence and may draw conclusions from the evidence based on his own reasoning, but may not argue as fact that which is not in evidence. McLaney v. Turner, 267 Ala. 588, 104 So.2d 315.

We are of the opinion defense counsel's argument entitled plaintiff to a new trial in this case. Colquett v. Williams, 264 Ala. 214, 86 So.2d 381; Thorne v. Parrish, 265 Ala. 193, 90 So.2d 781; Gwin v. Church, 272 Ala. 674, 133 So.2d 880.

Since the judgment must be reversed, we see no necessity in discussing the other instances of claimed error. These matters will probably not arise on another trial.

Reversed and remanded.