**AMERICAN PAMCOR, INC., a Corp. and James Clyde Clark**

v.

**Mabel Clara EVANS.**

6 Div. 863.

Supreme Court of Alabama.

April 27, 1972.

Joseph S. Mead, Birmingham, for appellants.

Hare, Wynn, Newell & Newton, Birmingham, for appellee.

MADDOX, Justice.

This is an appeal from a judgment of $13,000 entered pursuant to a jury verdict in favor of the plaintiff, Mabel Evans, in a personal injury action which arose out of an automobile accident. Plaintiff's husband brought a derivative suit and the jury assessed his damage at $2,000.[1]

Plaintiff's action contains two counts—one sounding in simple negligence, the other claiming wanton conduct.

Plaintiff claims that the car she was operating was rammed as she was turning off Highway 280 into her driveway in Goodwater, Alabama on a rainy, misty day on December 13, 1968. Defendant's driver claimed that the accident happened when

1. Since the judgment in the husband's cause is less than $10,000, the appeal in his case will be transferred to the Court of Civil Appeals under the provisions of § 11 of Act No. 987, Acts of Alabama, 1969, p. 1744, which is carried in Title 13, § 111(11), Code of Alabama, 1940, Recomp., 1958.

the car plaintiff was driving went into a skid and that the right rear of her car skidded into the left front of the truck he was operating. Plaintiff claimed she received neck and back injuries and incurred substantial expenses for medical attention as a result of the accident.

Defendants' motions for new trial were denied and this appeal was then taken.

Appellants raise by appropriate assignments of error five points. They say: (1) insurance coverage was unreasonably injected into the case when prospective jurors were examined; (2) that the trial court erroneously refused to admit into evidence hospital records showing previous hospitalizations of the plaintiff, one hospitalization being for a broken jaw, allegedly caused when her husband struck her; (3) that the trial court erroneously charged the jury on subsequent negligence when the jury returned to ask questions concerning any effect plaintiff's contributory negligence would have on the issues; (4) that the trial court should have permitted evidence that the plaintiff remained silent when a statement against her interest was made in her presence; (5) that the evidence was insufficient to submit the wanton count to the jury.

During the examination of prospective jurors the court asked whether any juror was employed by or had a financial interest in the Insurance Company of North America. A juror Crowder responded that she was a policyholder. Subsequently, plaintiff's counsel inquired of juror Crowder:

"MR. WYNN: Mrs. Crowder, you said, I believe that you are a policyholder with the Insurance Company of North America. I will ask you if that being true, do you feel like that you could fairly and impartially decide this case based strictly on the law and the evidence, or do you feel like you may be a little bit favorable to the insurance company that has your coverage?"

Juror Crowder later said she would not be biased because she was a policyholder.

Appellants claim the question imparted to the jury the fact that Insurance Company of North America would pay the judgment rather than the defendants, and, in view of this, the trial judge erred in failing to declare a mistrial. We disagree. In Hudson v. Stripling, 261 Ala. 196, 73 So.2d 514 (1954), a similar question was propounded to policyholders. This court there reiterated the settled principle that the plaintiff is entitled to have the jury qualified as to their connection with or interest in a liability insurance company obligated under its policy issued to the defendant, to pay all or any part of any recovery which may be had against the defendant in the case. This right of counsel to examine the jurors as to the extent and nature of their connection with the insurance company can be abused. This court has pointed out that counsel should be careful to avoid saying or doing anything which would lead the jury to believe that his opponent has insurance to protect him in respect to the matter in controversy when reference to insurance is not admissible for any proper purpose. Gwin v. Church, 272 Ala. 674, 133 So.2d 880 (1961). Without elaboration, the questions propounded on voir dire in Gwin v. Church, are not similar to the question here.

In *Gwin*, this court found that the insurance company mentioned in one of the questions had no connection with the case, and that no reason was shown for making the inquiry, either to determine the qualifications of jurors or to inform the plaintiff of possible bias so that plaintiff could intelligently exercise his right to strike.

Furthermore, in *Gwin*, this court cited some eight different instances where insurance coverage was injected into the case. The number of instances when insurance is injected in a case is not the sole yardstick by which prejudice to the defendant is measured. However, the question in each case is whether counsel has over-

stepped that almost imaginary line between what is allowable and what is not. In *Gwin*, it was easy to see the prejudicial effect. In a case like this, it is difficult to determine whether counsel got past the line of propriety. The trial court initially denied the motion for a mistrial and later denied the motion for a new trial. We find no prejudicial error in his rulings in this case.[2]

Appellants also claim that the trial court erred in refusing to admit hospital records reflecting a hospitalization of Mrs. Evans, the plaintiff, as a result of a beating by her husband. Appellants' argument is that the records were admissible to show that the plaintiff's condition could have been caused by her unhappy home life and poor emotional state.

Plaintiff's physician, Dr. Meyer, had testified that the plaintiff was suffering from a posttraumatic cervical dorsal and lumbar myositis and a fibrositis of the left shoulder.[3]

On cross-examination, appellant's counsel sought, unsuccessfully, to get Dr. Meyer to state that the plaintiff's fibrositis could have been caused by an unhappy personal life situation. Counsel used a textbook in the cross-examination and sought to have Dr. Meyer admit that a statement in the textbook that the fibrositis syndrome is probably precipitated by a psychosomatic disorder was accurate. The doctor did say it was "correct as read," but upon his examination of the textbook, Dr. Meyer stated that the portion from which counsel was reading referred to a *rheumatism* syndrome and was not related to an *injury* syndrome. Dr. Meyer testified that a "bad home life" would influence his opinion about the degree of plaintiff's suffering, but not about the *cause* of her injury.

■■ Appellants offered no expert witness who had examined the plaintiff or who could testify as an expert with regard to the issues on trial. Appellants sought to discredit plaintiff's doctor by use of a medical text, which plaintiff's doctor, as shown above, testified was inapplicable to the issues presented. Appellants then sought to have records of plaintiff's hospitalization on December 6, 1959, nine years prior to the accident, introduced into evidence to show that she was then hospitalized as a result of a blow she had received from her husband. One of the reasons given by the trial court for refusing to admit the hospitalization record was that if it had any probative value, it was so insignificant as compared to the harmful inference that a jury would get from it, that it would not be fair to admit it. We find no error in this ruling. Evidence, although logically relevant, may be excluded where it would serve comparatively little or no purpose except to arouse the passion, prejudices or sympathy of the jury. 31A C.J.S. Evidence § 159, p. 436.

■ Appellants also contend that the records of these hospitalizations were admissible on another theory. Appellants introduced at the close of the trial interrogatory No. 18 propounded to plaintiff and

---

2. It is interesting to note that *appellants* introduced into evidence a letter from plaintiff's doctor which described plaintiff's condition and was mailed to the Insurance Company of North America.

3. "A Myositis is a term for an inflammatory condition of the muscles resulting from the injury in this case. The fibrositis is the tightness in the shoulder capsule or the housing which surrounds the shoulder joint.
   "Q All right, sir. And was it your judgment that the injury, the myositis that she had in her spine and fibrositis she had in her shoulder, resulted from trauma, or from being involved in this automobile accident on December 13th, 1968?
   "A Yes, sir.
   "Q Can myositis and fibrositis be caused by other things than automobile accidents, or trauma, or some insult to the body?
   "A Yes sir.
   "Q In your judgment, did this occur from the automobile accident, sir?
   "A Yes, sir."

plaintiff's answer thereto.[4] The court received the interrogatory and plaintiff's answer in evidence. Then appellants reoffered the record of plaintiff's hospitalization mentioned previously. The court sustained plaintiff's objection to the evidence. We find no prejudicial error in this ruling. It has been said that a person who introduces answers to interrogatories made by the opposing party, makes him his witness and cannot impeach him. Warren, Burch & Co. v. Gabriel & Co., 51 Ala. 235 (1874). However, a person, by using the answer of the opposing party to interrogatories does not make it conclusive evidence. Such person may introduce contradictory evidence. Wilson v. Maria, 21 Ala. 359 (1852). But evidence offered to contradict the witness must be competent. See Williams v. Schaeffer, 262 Ala. 636, 80 So.2d 722 (1955). We have already shown that we do not think the trial court committed error in refusing to allow the prior hospitalizations to be shown. Appellants cite South Highlands Infirmary v. Camp, 279 Ala. 1, 180 So.2d 904 (1965) as authority for the admission of the 1959 hospitalization. That case involved the refusal of the court to give the affirmative charge, not the refusal of the court to *admit* evidence. True, Alabama has the "scintilla rule" but it applies only to *competent, relevant* evidence. The "scintilla rule" does not apply to the *admission of evidence,* but is applicable only where the question is whether there is sufficient *relevant* and *competent* evidence to submit the issues to the jury.

Appellants also claim that the trial court erred in charging the jury on subsequent negligence after the case was submitted to them and they had begun their deliberations. The court charged the jury on the elements of negligence, contributory negligence and wanton negligence. The jury retired and began deliberations. They returned to the courtroom for further instructions, which the court gave—primarily on the burden of proof.

The following then transpired:

"Mrs. Griggs: If the Plaintiff shall have contributed negligence to the accident can she recover anyway?

"A Juror: If we find for the Defendant?

"The Court: Ladies and Gentlemen, I tried to—in answer to that question I will say this: There is one matter that I did not charge you on which is embraced in the pleadings in this case. And I will charge you on that at this time. That is what we call subsequent negligence. It's embraced in the pleadings under the negligence count. Under that aspect of the

---

4. Interrogatory No. 18 was as follows:
   "State whether or not, prior to the occurrence made the basis of this suit, you were ever at any time injured in any manner whatsoever to any extent. (a) If you were injured prior to the occurrence made the basis of this suit in any manner, please describe in detail how you were injured, giving the date of each such injury, and the extent of your said injury. (b) Have you sustained any injuries of any nature whatsoever subsequent to the occurrence made the basis of this suit? (c) If so, describe the same fully and in detail. (d) Have you ever made claim or filed suit for any injury or damage arising out of any occurrence prior to the accident made the basis of this suit? (e) If so, state where each such occurrence happened, against whom each such claim was made and the outcome of each. (f) Give the name and address of each and every doctor who has treated or examined you during the five years next preceding the date of the occurrence made the basis of this suit and describe the condition for which you were treated or examined."
   Plaintiff's answer was:
   "Prior to the time of the accident, I had never received a broken bone anywhere in my body that I knew about. I did have internal surgery some fourteen years ago where I was hospitalized in Russell Hospital, and I believe it was Dr. Cockerham who performed the surgery. I have had several miscarriages and I was hospitalized for each of these occasions, and the last one was over fifteen years ago and the hospitalization was at the Russell Hospital in Alexander City. I have not received any injuries since this accident other than those resulting from the accident in question."

422

count the Plaintiff says in effect this: She says that—charges that the Defendant was guilty of subsequent negligence."

The court then gave an oral instruction on subsequent negligence.

Appellants contend that once the jury retires, the court is without authority to give additional instructions, even if such instructions are in answer to a request of the jury. Appellants cite Prosser v. Henderson, 11 Ala. 484 (1847) to support their argument that the court's charge on subsequent negligence was error. *Prosser*, supra, did hold that the *parties* did not have the right to call the jury back into court and have the court give them additional instructions. But it is elementary that the *court* may state to the jury the law of the case. Title 7, § 270, Code of Alabama, 1940, Recomp., 1958. There being no statutory prohibition, the court may, after submission of the cause to the jury, on its own motion, recall the jury and give them additional instructions on the law of the case when the ends of justice and the circumstances of the case require that this be done. This is especially true when the jury requests further instructions on the law of the case. See 53 Am.Jur. §§ 941, 942, p. 667. In Matthews v. Liberty Mutual Insurance Company, 286 Ala. 598, 243 So.2d 703 (1971) this court held that the giving of additional instructions to the jury, upon their request, in the absence of counsel was error, but inferentially said that the court could give additional instructions in open court if counsel was present, and in some instances, when counsel is absent, if proper notice is given.

Without question, the issue of subsequent negligence was presented by the pleadings and the evidence in the case. It is fundamental that subsequent negligence may be proved under a count charging simple negligence. Lemons v. Allison, 265 Ala. 347, 91 So.2d 236 (1956).

Appellants' Assignment of Error 7 claims that the trial court erred in refusing to admit into evidence a statement made by a bystander at the scene of the accident. Counsel for appellants attempted to show by Pamcor's driver, Clark, that a bystander at the scene of the accident, after seeing the Christmas present which Mrs. Evans had for her husband in the trunk of her car, stated: "Well, it won't do any good to bring it up to my house now, because your husband has already seen it." The purpose of the testimony apparently was to show that Mrs. Evans was actually getting ready to turn left to go to the house of her neighbor rather than turning right into her own driveway as she testified. The theory of the appellants is that Mrs. Evans' *silence*, after the statement was made in her presence by her neighbor, was an *admission* of the truth of the statement so that the statement would be admissible in evidence as an exception to the hearsay rule.

Under the circumstances of this case, there was no error in refusing to admit the statement of the bystander. The statement was not so explicit and controversial as to require the plaintiff to deny the truth of the statement. The rule is generally stated that where evidence is offered against a party, showing that a statement was made in his presence, which contained an accusation against him, and to which he did not reply, thereby raising an implied admission on his part of the truth of the charge, it may be admitted under certain safeguards. Hicks v. Lawson, 39 Ala. 90 (1863). We find no error in the trial court's refusal to admit the statement.

The last point raised by appellants is directed to the sufficiency of the evidence to submit the wanton count to the jury. That which constitutes wanton misconduct depends upon the facts presented in each particular case. Westbrook v. Gibbs, 285 Ala. 223, 231 So.2d 97 (1970). At the time of the accident, it was misting rain. The investigating officer testified that Clark, the driver of the Pamcor truck, told him that he was behind Mrs. Evans and that she had a left blinker on, and

when he came over the hill fast, and around the curve, he did not have time to stop in time to avoid hitting her. Clark had his running lights and headlights on at the time of the accident. There was testimony that he saw the Evans' car when he was 350 feet back. The truck travelled 90 feet from the time it struck the car until it finally came to a rest. Clark testified that he left the Columbus, Georgia airport and had driven for three hours, an hour and a half of such time in the rain, prior to the accident.

In considering the sufficiency of the evidence of wantonness to be submitted to the jury, this court must accept as true, and indulge such reasonable inferences as the jury was free to draw from the evidence. Myers v. Evans, 287 Ala. 710, 255 So.2d 581 (1971).

We are of the opinion that the evidence, on reasonable inferences therefrom, are sufficient on wantonness to satisfy the scintilla rule.

Affirmed.

HEFLIN, C. J., and LAWSON, MERRILL and HARWOOD, JJ., concur.