300 So.2d 112

**Letha LANDERS**

v.

**Marvin Coleman LONG.**

**Civ. 352.**

Court of Civil Appeals of Alabama.

Sept. 4, 1974.

Robert Straub, Decatur, C. E. Carmichael, Jr., Tuscumbia, for appellee.

Eyster, Eyster & Key, Decatur, for appellant.

PER CURIAM:

This is an appeal by the defendant from a judgment in the trial court for the plaintiff for damages in the amount of $2,800 and from the judgment of the trial court denying defendant's motion for a new trial.

Appellant, though assigning nine errors, has confined the issues to two, viz: (1) Did the court err in denying defendant's motion for a mistrial and later for a new trial because of an apparent effort on the

part of plaintiff's attorney to inject into the case the question of whether or not the defendant had liability insurance on her automobile that was involved in the accident, and (2) Did the court err in overruling defendant's objection to the following question asked of the plaintiff by his attorney:

"Q. Mr. Long, you are a poor man?

"A. That's right.

"MR. KEY: Now, Your Honor, we object to that. That is clearly illegal, and has no bearing on the issues in the case, whether he is poor or whether he is rich, and we will ask the Court to rule on our objection, if the Court please.

"THE COURT: Overruled.

"MR. KEY: We move to exclude his answer on the same grounds.

"THE COURT: Overruled.

"MR. KEY: We except to the Court's ruling,"

and did the court err to reversal in denying defendant's motion for a mistrial and later for a new trial for that during his closing argument to the jury, one of plaintiff's attorneys said to the jury, "I represent a poor man."?

Since this appeal is limited to those two issues, we see no point in cluttering this opinion with an account of the facts of the accident; wherefore, we shall confine ourselves to the two issues as presented.

■ We first address ourselves to the question of whether the plaintiff, in qualifying the jurors on whether they had any interest in or connection with defendant's liability insurance carrier, crossed that thin line of demarcation that lies between "no error" and "error".

Appellant has cited American Pamcor, Inc. v. Evans, 288 Ala. 416, 261 So.2d 739, as being a case in which the "no error" line was not crossed, and Gwin v. Church, 272 Ala. 674, 133 So.2d 880 as one in

which it was crossed. In the American Pamcor, Inc. case, *supra,* the trial court inquired whether any juror was employed by or had a financial interest in the Insurance Company of North America. A juror, Crowder, responded that she was a policyholder. Subsequently, plaintiff's counsel inquired of juror Crowder:

"Mrs. Crowder, you said, I believe that you are a policyholder with the Insurance Company of North America. I will ask you if that being true, do you feel like that you could fairly and impartially decide this case based strictly on the law and the evidence, or do you feel like you may be a little bit favorable to the insurance company that has your coverage?"

Juror Crowder answered that she would not be biased. The Supreme Court, in a comprehensive opinion by Justice Maddox, carefully distinguished this case from the *Gwin* case, *supra;* held that the "no error" line was not crossed; and affirmed plaintiff's judgment. In distinguishing the *American Pamcor, Inc.* case, *supra,* from the *Gwin* case, *supra,* Justice Maddox pointed out that in *Gwin* the court listed some eight different instances where insurance coverage was injected into the case: then commented that the number of instances when insurance is injected in a case is not the sole yardstick by which prejudice to the defendant is measured, but that the question in each case is "whether counsel has overstepped that almost imaginary line between what is allowable and what is not."

Defendant's insistence on error in this instance is predicated upon the following excerpt from the record:

"MR. CARMICHAEL: Now, we would like to know whether any member of this venire has ever been employed by any insurance company in any capacity as an agent or insurance adjustor? If so, would you please stand?

"(NO ANSWER FROM ANY OF THE JURORS)

"MR. CARMICHAEL: We would like to know if any member of this venire has ever had a member of their family who has been an agent or insurance adjustor for any insurance company? If so, would you please stand?

"(NO ANSWER FROM ANY OF THE JURORS)

"MR. CARMICHAEL: I think this question has been asked, but I would like to ask it again: Has any member of this venire ever been employed by any insurance company?

"MR. KEY: Your Honor, we—

"THE COURT: Well, I think that is about enough on that.

"MR. KEY: —would like to object to the last question and we move for a mistrial on the grounds that he has asked three consecutive questions concerning insurance companies, and that is highly prejudicial to our case, and we move for a mistrial on that basis at this time.

"THE COURT: All right, overruled."

With that, Mr. Carmichael went on to a series of questions as to whether any of the jurors or members of their families had had accidents or had sued or been sued, and related matters, none of which was objected to.

Appellant argues that the questions aimed at the interest of jurors in, or connection with, or former connection with, any insurance company, could not have been to determine the qualifications of jurors or to inform the plaintiff of possible bias, but that such questions were propounded for the sole purpose of leading the jury to believe that the appellant was protected by liability insurance. With that we do not agree. We can well understand why a plaintiff's lawyer would want to know if any insurance agent or adjustor was on the venire. It is a fact of life that no matter how honest and conscientious an individual may be, he is most likely to be influenced, if not actually biased, by his past or present occupational experiences. So we cannot arbitrarily conclude that Mr. Carmichael was motivated by the wicked desire to prejudice the jury, nor that the jury was so prejudiced. We conclude, therefore, that as to the first issue this case falls under the influence of the *American Pamcor, Inc.* case, *supra*; that Mr. Carmichael did not overstep that fateful line, and that no prejudicial error was committed.

■ As to the second issue presented, we are of a different opinion. While the plaintiff was testifying in his own behalf, the following dialogue transpired:

"Q. Mr. Long, you are a poor man?

"A. That's right.

"MR. KEY: Now, Your Honor, we object to that. That is clearly illegal, and has no bearing on the issues in the case, whether he is poor or whether he is rich, and we will ask the Court to rule on our objection, if the Court please.

"THE COURT: Overruled."

The error was later compounded by plaintiff's attorney during his closing argument to the jury, as disclosed by the record, from which we quote:

"(WHEREUPON MR. CARMICHAEL MADE CLOSING STATEMENTS TO THE JURY ON BEHALF OF THE PLAINTIFF AND THE FOLLOWING OBJECTIONS WERE MADE BY DEFENSE COUNSEL, MR. KEY)

"MR. KEY: Your Honor, we object to the statement of Mr. Carmichael, that he represents a 'Poor man'. And we ask the Court to instruct the jury to the effect that that has no place in the lawsuit; they should not consider the economic status of the—of either party, and for them to do so would be improper.

"THE COURT: Well, the jury knows and understands that.

"MR. CARMICHAEL: Now, ladies and gentlemen of the jury,—

"MR. KEY: Could I complete my objections, please, sir?

"MR. CARMICHAEL: All right, sir.

"MR. KEY: And I would like to further move for a mistrial on the basis of the statement that Mr. Carmichael just made, and also that and the cumulative effect of the testimony that he brought out earlier to the same effect, on the grounds that such testimony is highly improper in a suit such as this, and is highly prejudicial to the other side of the case. We have not attempted to prove the economic status of any person involved in it, and we move for a mistrial.

"THE COURT: Overruled.

"MR. KEY: We except."

Later the court in his oral charge to the jury undertook to eradicate the mischief that had been done by saying:

". . . There has been some reference made to poor people and rich people and this and that; I tell you, as a matter of law, that you are not to consider the fact that any party to this lawsuit might be an alleged poor person or any other person, because I am sure all of you understand that a person's economic situation has no place or bearing in a court of law, because here you are allowed only to deal with the facts as the Court determines that you get them, and the law that I give you, in order to deal with those facts; and any decision that you might make with reference to this case or any other case that you might ever sit on in the future, would be illegal, if you base it on anything other than those two facets."

We do not believe these remarks of the court were sufficient to wipe out the prejudice that already had been planted in the minds of the jury by the actions of plaintiff's lawyer and the erroneous failure of the trial court to sustain defendant's timely objections and motions for a mistrial.

Many years ago the Supreme Court laid down a very strong policy against the injection by counsel of questions of need, or ability to pay, or relative economic positions of parties into the trial of cases. In at least one case the court went so far as to condemn the effort of counsel for the defendant in a damage suit to inject into the case that the plaintiff was a wealthy man. Allison v. Acton-Etheridge Coal Co., Inc., 289 Ala. 443, 268 So.2d 725. In the *Allison* case, *supra*, Judge Harwood said:

"An excellent discussion on the question of improper argument to a jury is to be found in the often cited opinion of Crum, J., in Alabama Fuel & Iron Co. v. Benenante, 11 Ala.App. 644, 66 So. 942. Therein are gathered and discussed many of the Alabama cases on this question up to the time of that 1914 decision.

"The following general principles were set forth by Judge Crum with quotations from supporting authorities, which citations we will omit.

"'* * * When an attorney in the heat of debate, goes to such extraordinary lengths, generally, the court should promptly set aside any verdict that may be rendered for his client. The repressive powers of a court, to prevent such departures from legitimate argument of a cause before a jury, should be vigorously applied. No mere statement that it is out of order or improper can meet the exigencies of the case.

". . .

"'Nothing short of a prompt, emphatic disapproval of such line of argument, and that from the court itself, can avert the probable mischief.

". . .

"'The correction should have been as broad as the error committed.'"

In Pryor v. Limestone County, 225 Ala. 540, 144 So. 18, Chief Justice Anderson, reversing and remanding, wrote:

"In arguing this case to the jury, counsel for appellee said: 'Gentlemen, these rich little children have no complaint against Limestone County; by taking this land the county has made them richer.' This argument was highly improper, and, notwithstanding the trial court sustained appellants' objection to same, and instructed the jury not to consider said argument, it is of that character which is so poisonous and improper as to be almost immune from eradication. [Citations omitted.]

"The trial court erred in not granting the motion for a new trial on account of this improper argument."

The cases hereinabove cited and quoted from are representative of the attitude of our Supreme Court on this question of injecting relative or contrasting economic standings of the parties into the trial of cases. Our Reports are replete with cases holding to the same effect. We content ourselves with calling the reader's attention to Alabama Iron and Fuel Co. v. Benenante, 11 Ala.App. 644, 66 So. 942; American Ry. Exp. Co. v. Reid, 216 Ala. 479, 113 So. 507; Birmingham Water Works Co. v. Williams, 228 Ala. 288, 153 So. 268.

We hold that the court committed error to reversal in overruling defendant's objection to plaintiff's attorney's affirmative question to plaintiff, "You are a ·poor man?" Also, in denying defendant's motion for a new trial.

The foregoing opinion was prepared by Honorable T. WERTH THAGARD, Supernumerary Judge, serving as a judge of this court under Section 2 of Act No. 288, Acts of Alabama July 7, 1945, as amended; his opinion is hereby adopted as that of the court.

Reversed and remanded.

WRIGHT, P. J., and HOLMES and BRADLEY, JJ., concur.