73 So.3d 1213 (2011)
Ex parte Gilbert Lee LITTRELL.
(In re Gilbert Lee Littrell et al. v. Doris Thrasher, individually and as the parent and next friend of Gary Marcus Matlock, and RLI Insurance Company).
1100344.
Supreme Court of Alabama.
April 1, 2011.
Rehearing Denied June 17, 2011.
*1214 Terry B. Rochester of Harold G. Peck & Associates, Florence, for petitioner.
Bert P. Taylor of Taylor Ritter, P.C., Orange Beach, for respondent Gary Marcus Matlock.
BOLIN, Justice.
Gilbert Lee Littrell petitions this Court for a writ of mandamus directing the Colbert Circuit Court to vacate its order of November 10, 2010, denying Littrell's motion to require RLI Insurance Company, the underinsured-motorist carrier, to be bound by its decision to opt out of participation in the trial of this case and to prevent any appearance and participation by RLI's counsel Bert P. Taylor as additional counsel for the defendant, Doris Thrasher, or, alternatively, to allow Littrell in the trial of this case to reveal Taylor's representation of RLI, RLI's identity, and the reason for RLI's involvement in the case. We grant the petition and issue the writ.
Littrell was employed by Edwards Oil Company of Lawrenceburg, Inc. On May 26, 2005, a vehicle being operated by Littrell was involved in a motor-vehicle accident with a vehicle being operated by Matlock, who was a minor at the time of the accident. Subsequently, Littrell sued Thrasher, individually and as the parent and next friend of Gary Marcus Matlock, and RLI, the underinsured-motorist carrier for Edwards Oil.[1]
*1215 On February 12, 2007, RLI gave notice that it was exercising its right to reject a settlement offer made by Thrasher of $25,000, the limits of a liability policy issued by State Farm Mutual Automobile Insurance Company; that it was maintaining its subrogation interests against Thrasher; and that it was advancing the policy limits of $25,000 in compliance with the procedure set forth in Lambert v. State Farm Mutual Automobile Insurance Co., 576 So.2d 160 (Ala.1991). RLI also elected to "opt out" of the case and withdraw from active participation in the litigation of the case pursuant to Lowe v. Nationwide Insurance Co., 521 So.2d 1309 (Ala.1988). RLI stipulated that it would be bound by any judgment against Thrasher in excess of Thrasher's policy limits up to the limits of coverage available to Littrell under the underinsured-motorist policy.
At all times during prosecution of this action, RLI was represented by LaBella Alvis of Christian & Small, LLP. However, on April 23, 2009, Bert P. Taylor of Taylor Ritter, P.C., entered an appearance on behalf of RLI as an additional attorney of record. Thereafter, Taylor participated in the depositions of Littrell, Matlock, and Dr. Johnny Stephen Howell, Littrell's treating physician. In addition to participating in discovery, Taylor also enlisted expert witnesses on behalf of RLI.
On June 21, 2010, Taylor entered an appearance as cocounsel of record on behalf of the defendant Thrasher. Thrasher was already being represented by counsel apparently provided by her liability insurer State Farm. On June 23, 2010, Littrell objected to Taylor's notice of appearance as cocounsel of record for Thrasher, arguing that Taylor, as counsel of record for RLI, is precluded from participating in the trial of this case because RLI had chosen to opt out and to withdraw from active participation in the case pursuant to Lowe, supra. Littrell requested that the trial court deny any appearance or participation by Taylor as counsel for Thrasher in the trial of this matter and require RLI to be bound by its previous decision to opt out.
On June 29, 2010, Taylor moved the trial court to allow him to withdraw as counsel of record for RLI. Littrell states that Taylor is not being compensated by Thrasher or her insurer and, according to Littrell, is still employed by RLI.[2] On November 10, 2010, the trial court entered an order denying Littrell's request to disqualify Taylor from participating in this matter as Thrasher's counsel of record. This timely petition for a writ of mandamus followed.

Standard of Review
This Court has stated:
"`Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"
Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995)). In reviewing a trial court's application of the law to undisputed facts, we *1216 apply a de novo standard of review. Ex parte J.E., 1 So.3d 1002, 1008 (Ala.2008).

Discussion
This Court set forth in Lowe, supra, the following procedure now applied in cases when the defendant motorist is either uninsured or underinsured and a uninsured/underinsured-motorist claim is made:
"A plaintiff is allowed either to join as a party defendant his own liability insurer in a suit against the underinsured motorist or merely to give it notice of the filing of the action against the motorist and of the possibility of a claim under the underinsured motorist coverage at the conclusion of the trial. If the insurer is named as a party, it would have the right, within a reasonable time after service of process, to elect either to participate in the trial (in which case its identity and the reason for its being involved are proper information for the jury), or not to participate in the trial (in which case no mention of it or its potential involvement is permitted by the trial court). Under either election, the insurer would be bound by the factfinder's decisions on the issues of liability and damages. If the insurer is not joined but merely is given notice of the filing of the action, it can decide either to intervene or to stay out of the case. The results of either choice parallel those set out abovewhere the insurer is joined as a party defendant. Whether the choice is timely made is left to the discretion of the trial court, to be judged according to the posture of the case. In either event, the trial court could then fashion its judgment accordingly."
521 So.2d at 1310. As this Court noted, three essential considerations are accommodated by the above-quoted procedure: (1) the right of the liability insurer to know of and to participate in the suit; (2) the right of the insured to litigate all aspects of his or her claim in a single suit, avoiding costly and time-consuming separate trials of the same issues and facts; and (3) protection from the introduction of extraneous and corrupting influences, namely evidence of insurance coverage, during the liability phase of a trial. Lowe, supra.
Littrell argues that Taylor's entry of an appearance as additional counsel of record for Thrasher and his withdrawal as counsel for RLI, after RLI had "opted out" of the proceedings pursuant to Lowe, violates the procedure set forth in Lowe. Littrell contends that Taylor's appearance is a procedural move designed to insulate RLI from being introduced in any way at trial, while permitting RLI to actively participate at trial. Littrell cites Ex parte Edgar, 543 So.2d 682 (Ala.1989), in support of his position.
In Ex parte Edgar, the plaintiff sued the defendant seeking damages for injuries she sustained as the result of an automobile accident. She also asserted a claim against her insurer, Alfa Mutual Insurance Company, seeking underinsured-motorist benefits. Alfa filed a motion pursuant to Lowe seeking to exercise its right not to participate in the trial of the claims asserted by the plaintiff against the defendant. However, Alfa also sought in the motion the right to participate in discovery. Subsequently, Alfa amended the motion by stating that it was also reserving the right to intervene in the case at a later date. The plaintiff objected to Alfa's motion to opt out of the case, stating that, if it did opt out, there was no authority to grant Alfa's requests to participate in discovery and to reserve the right to join the litigation at a later date. The trial court denied Alfa's request to withdraw from the case. Ex parte Edgar.
*1217 Alfa petitioned this Court for a writ of mandamus. In denying the petition and concluding that Alfa had made an improper election to withdraw from the case, this Court stated:
"[I]f the insurer is joined as a defendant by its insured, it is afforded the option under Lowe, if it acts timely, of being dismissed as a party to the case. Consequently, the insurer's withdrawal from the case under Lowe terminates its right to participate in discovery. Rule 26, [Ala.] R. Civ. P.
". . . .
"Alfa had the right under Lowe to withdraw from the present case at the time that it filed its motion on May 2, 1988. However, Alfa sought permission in that motion to continue to participate in discovery and, in addition, sought in its August 29, 1988, amended motion to reserve the right to intervene, if it determined that it would be in its best interest to later reenter the case. This is just the opposite of the procedure that was sanctioned in Lowe. Although Alfa argues that its request to participate in discovery was in the nature of a request for additional relief and, therefore, that its inclusion in the motion is not a ground upon which the trial court could have based its ruling, we view Alfa's request to withdraw as being conditioned on its also being allowed to participate in discovery. The clear import of Alfa's motion, as amended, is that Alfa wanted out of the case, but only if it could monitor the progression of the case through the discovery process and then intervene if it deemed it necessary in order to protect its interest. Construing Alfa's motion in this manner, the trial court had no authority to grant it."
Ex parte Edgar, 543 So.2d at 684-85.
Littrell argues that RLI, like Alfa in Ex parte Edgar, withdrew from the case pursuant to Lowe in order to prevent a jury from learning of the existence of insurance coverage and yet, at the same time, wanted to participate in discovery and at trial through its attorney Taylor. Littrell states that by substituting Thrasher as his client, Taylor is attempting to participate in the litigation of this matter on behalf of RLI without allowing Littrell the opportunity to reveal the identity of RLI and the reason for its being involved in the case. Thrasher relies upon the decisions in Driver v. National Security Fire & Casualty Co., 658 So.2d 390 (Ala.1995), and Ex parte State Farm Mutual Automobile Insurance Co., 674 So.2d 75 (Ala.1995), in support of her position that Taylor may serve as an additional counsel of record for her.
The plaintiff in Driver was a passenger in a vehicle that was involved in a collision with another vehicle being operated by the defendant, an uninsured motorist. The defendant died of injuries sustained in the accident. The plaintiff was insured by a liability-insurance policy issued by National Security Fire & Casualty Company ("National Security"), which contained an uninsured-motorist provision inuring to the benefit of the plaintiff. The plaintiff sued the uninsured defendant and included a claim against National Security seeking uninsured-motorist benefits under the policy. After the action was filed, the probate court appointed an attorney as the administrator ad litem for the defendant's estate. The same attorney who was appointed administrator ad litem also represented the defendant's estate in the pending litigation. Thereafter, National Security opted out of the trial of the case, pursuant to the procedure established in Lowe. On the eve of trial, the attorney for the defendant's estate requested that National Security's former counsel enter an appearance for the defendant's estate and assist in the trial. Over objection by the plaintiff, National *1218 Security's former counsel entered an appearance for the defendant's estate as cocounsel. The jury ultimately rendered a verdict in favor of the defendant's estate, and the trial court entered a judgment on that verdict.
The plaintiff argued on appeal that the trial court committed reversible error in allowing National Security's former counsel to act as cocounsel for the defendant's estate at trial. In affirming the judgment, this Court stated:
"National Security opted out under Lowe, to prevent the jury's knowing that insurance was involved in the case. In order to avoid any conflict, National Security agreed to waive any subrogation rights it might have against the estate of [the defendant] in the event there was a verdict for Driver. Furthermore, National Security agreed, as required by Lowe, to be bound by the jury's decision as to liability and damages and to satisfy any judgment for [the plaintiff], up to the policy limits. Lowe, [521 So.2d] at 1310.
". . . .
"In Ex parte Edgar, 543 So.2d 682 (Ala.1989), the insured sued an alleged tort-feasor to recover damages arising out of an automobile accident and sued Alfa Mutual Insurance Company to recover underinsured motorist benefits. Alfa sought to exercise its option not to participate in the trial of the driver's claims against the tort-feasor. Alfa did, however, seek to participate in discovery and then to intervene, if necessary, in order to protect its interest. The trial court denied Alfa's motion to withdraw, stating that the motion was not timely. This Court held that Alfa had the right under Lowe to withdraw from the case, i.e., that the election was timely, but held that its withdrawal from the case terminated its right to participate in discovery. Ex parte Edgar, supra, at 685.
"The plaintiff cites Lowe and Edgar for the proposition that if an insurance company opts out of the trial in an uninsured motorist case it cannot `participate' in the trial by hiring an attorney for the uninsured defendant motorist. We disagree.
"Both Lowe and Edgar involved a situation where the defendant motorist was allegedly underinsured. In such a situation, where the defendant motorist has liability insurance but the limits may not be sufficient to fully satisfy the potential judgment against him, the defendant motorist has an attorney retained by the carrier to defend him. When the underinsured carrier is named as a defendant, and chooses to opt out of the trial of the case, there is an attorney defending the interest of the underinsured motorist. As this Court acknowledged in Lowe, the underinsured motorist carrier, in opting out of the case, is essentially placing its fate in the hands of an attorney chosen by someone else. 521 So.2d at 1310.
"A different situation is created when the defendant motorist has no liability coverage: If the uninsured motorist carrier opts out of the trial of the case and there is no defense counsel already in place to represent the defendant motorist, then there is no mechanism to protect the interests of the insurer if the defendant motorist fails to, or chooses not to, defend his case. Understanding the need for the uninsured motorist insurance carrier to protect its interests, we hold that once the carrier opts out of the trial under Lowe, it may, in its discretion, hire an attorney to represent the uninsured motorist defendant."
Driver, 658 So.2d at 394-95.
In Ex parte State Farm, the plaintiff was involved in an automobile accident *1219 with an uninsured motorist. The plaintiff had an automobile-liability policy with State Farm. The plaintiff sued the defendant and joined a claim against State Farm, seeking uninsured-motorist benefits. State Farm chose to opt out of the trial, relying on the procedures set forth in Lowe. State Farm then petitioned the trial court to allow it to hire an additional attorney to help represent at trial the defendant, who had already retained his own attorney. The trial court denied State Farm's request. State Farm then petitioned this Court for a writ of mandamus directing the trial court to allow it to hire additional trial counsel for the defendant.
In granting State Farm's petition, this Court relied on the decision in Driver, supra, and stated:
"Even when an uninsured motorist can afford to hire a defense attorney, the interests of the insurance company providing uninsured motorist benefits may not always be adequately represented at trial by that attorney, because the uninsured motorist's interests may not always be squarely aligned with those of the insurance carrier. Obviously, there are also potential collusion problems. `Understanding the need for the uninsured motorist insurance carrier to protect its interests,' we held in Driver, supra, `that once the carrier opts out of the trial under Lowe, it may, in its discretion, hire an [additional] attorney to represent the uninsured motorist defendant.' 658 So.2d at 395."
Ex parte State Farm, 674 So.2d at 77.
Thrasher argues that this case is similar to cases involving an uninsured motorist because RLI has advanced the $25,000 in policy limits and that RLI, like an uninsured carrier in the uninsured scenario, must now bear the full brunt of potential liability. Thus, Thrasher contends, the holdings in Driver and Ex parte State Farm are applicable in this case and RLI has the right to appoint counsel to represent her.
Initially we note that, applying this Court's holding in Ex parte Edgar, supra, to the facts of this case, it is clear that RLI and its attorney Taylor were without authority to participate in discovery after RLI had elected to opt out of the case pursuant to Lowe, supra. However, it does not appear from the materials presently before this Court that Littrell objected to RLI's and Taylor's participation in discovery. It was not until Taylor entered a notice of appearance on behalf of Thrasher that Littrell raised any objection in this case. Accordingly, any issue as to RLI's and Taylor's participation in discovery has been waived.
Secondly, Littrell argues that because this case involves under insured-motorist benefits, as opposed to un insured-motorist benefits, and State Farm has provided Thrasher with competent and experienced counsel, who has represented Thrasher since the beginning of the action, the holdings in Driver and Ex parte State Farm are not applicable and RLI cannot retain Taylor to represent Thrasher. We agree. The holdings in Driver and Ex parte State Farm are limited to the uninsured scenario. The precarious situation in which an insurer might find itself in the uninsured scenario, as thoroughly explained in Driver and Ex parte State Farm, is simply not present here, where the underinsured Thrasher has been provided counsel by State Farm since the outset of the case.[3]
*1220 Further, Thrasher's contention that this case is similar to the uninsured scenario because RLI has advanced the policy limits in this case and must bear the full brunt of any potential liability is not well taken. Although RLI has advanced the policy limits in this case, it also expressly preserved its subrogation interests against Thrasher pursuant to the procedures set forth in Lambert, supra.[4] Thus, RLI does not bear the full brunt of the potential liability alone. Both RLI and Thrasher have a mutual interest in limiting their exposure to potential liability. We also note that State Farm does not become a disinterested party simply because RLI has advanced the policy limits under State Farm's liability policy covering Matlock. This Court stated in Lambert that "the tort-feasor's liability insurer has a higher duty than that of merely offering to pay the limits of its insured's liability policy. This Court has held that the insurer's duty to defend is more extensive than its duty to pay." Lambert, 576 So.2d at 167. Therefore, this is not a situation, as discussed in Ex parte State Farm, where the interests of the parties are not "squarely aligned." Ex parte State Farm, 674 So.2d at 77.

Conclusion
We conclude that Littrell has demonstrated a clear legal right to the relief sought. Accordingly, we grant the petition for a writ of mandamus and direct the Colbert Circuit Court to vacate its order of November 10, 2010, denying Littrell's motion to require RLI to be bound by its decision to opt out of participation in the trial of this cause and to prevent any appearance and participation by RLI's counsel Bert P. Taylor as additional counsel for the defendant Thrasher.
PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and WOODALL, STUART, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., dissents.
MURDOCK, Justice (dissenting).
The procedure described in Lowe v. Nationwide Insurance Co., 521 So.2d 1309 (Ala.1988), was suggested to the Court by both parties to that appeal, and agreed to by the Court, under circumstances where there were no "problems of confidence in defense counsel['s]" ability to protect the interests of the underinsured-motorist-insurance carrier. 521 So.2d at 1310. Specifically, in Lowe, the same insurance company provided both liability coverage to the alleged tortfeasor and underinsured-motorist coverage to the plaintiff. As the Court explained:

*1221 "[T]he alleged tort-feasor's liability insurer and the plaintiff's underinsured motorist insurer are the same company. The problems of confidence in defense counsel and the knowledge of applicable limits do not exist. The suggested procedure seems unimpeachable under the circumstances, as well as being readily adaptable to other underinsured motorist claims."
Lowe, 521 So.2d at 1310. Thus, Lowe was not concerned with the issue whether the plaintiff's underinsured-motorist insurer would be permitted to pay for counsel other than, or in addition to, whatever counsel might otherwise represent the alleged tortfeasor.
Subsequently, however, in Driver v. National Security Fire & Casualty Co., 658 So.2d 390 (Ala.1995), this Court was concerned with such a situation. The Court in Driver held that an uninsured-motorist-insurance carrier could hire an attorney to represent an uninsured-motorist defendant, even after the carrier had opted out of the trial under the procedure described in Lowe, because of "the need for the uninsured motorist insurance carrier to protect its interests" with an attorney in whom it had "confidence." Driver, 658 So.2d at 395.
This Court was again confronted with a situation in which "confidence in defense counsel" might be an issue in Ex parte State Farm Mutual Automobile Insurance Co., 674 So.2d 75 (Ala.1995). The Court held that an uninsured-motorist-insurance carrier may hire an additional attorney to represent an uninsured-motorist defendant who already had hired an attorney using his or her own funds. 674 So.2d at 77.
The above-emphasized rationale of Driver logically applies (1) to the situation where an uninsured motorist has not been able to hire an attorney using his or her own funds and the interests of the alleged tortfeasor and of the uninsured-motorist-insurance carrier would be better protected if the alleged tortfeasor were to be represented by counsel proposed by the carrier, i.e., the situation presented in Driver, (2) to the situation where an uninsured motorist has hired an attorney using his or her own funds but the alleged tortfeasor and the uninsured-motorist-insurance carrier agree that their respective interests would be better protected if different or additional counsel were to represent the alleged tortfeasor, i.e., the situation presented in State Farm, and (3) to the situation where an underinsured motorist is represented by an attorney paid for by his or her own liability insurance company, but the alleged tortfeasor, his or her liability carrier, and the underinsured-motorist-insurance carrier agree that their respective interests would better protected if the alleged tortfeasor were to be represented by different or additional counsel proposed by the carrier, i.e., the situation presented in the present case. I fail to see a principled distinction between any of these three situations. In all three, the reason articulated by this Court for its holdings in Driver and State Farm is present: the insurance carrier's need to protect its interest by insuring that the alleged tortfeasor, whose potential liability it insures, is represented by defense counsel in whom the carrier has confidence.
Further, absent a conflict of interest or similar concern involving the plaintiff (e.g., where proposed counsel for the alleged tortfeasor previously has represented the plaintiff in the same litigation), I cannot discern what concern it is of a plaintiff what counsel the alleged tortfeasor (and his or her liability carrier, where applicable) has chosen or agreed to (as has occurred here with respect to Taylor) or who pays counsel's fees. Lowe was concerned *1222 with accommodating three specific, competing considerations:
"1) that of protecting the right of the insurer to know of, and participate in, the suit; 2) that of protecting the right of the insured to litigate all aspects of his claim in a single suit (`Separate trials of the same issues and facts are a waste of time and money, and should be avoided if possible,' Wall v. Hodges, 465 So.2d 359 (Ala.1984)); and 3) that of protecting the liability phase of the trial from the introduction of extraneous and corrupting influences, namely, evidence of insurance. Robins Engineering, Inc. v. Cockrell, 354 So.2d 1 (Ala.1977)."
521 So.2d at 1309. Only one of these considerations is a concern of the plaintiff, i.e., protecting the right of the plaintiff to litigate both its claim against the alleged tortfeasor and its claim against the uninsured/underinsured-motorist carrier in the same proceeding. The Lowe Court adopted an arrangement that fully addressed this concern, giving to plaintiffs the initial right to choose, in every case, whether they will litigate both their claims in the same proceeding. Once the plaintiff makes that choice, the concern of the plaintiff identified in Lowe will have been addressed. Assuming the plaintiff chooses to litigate both of its claims in the same proceeding, the concerns that remain are those of the uninsured/underinsured-motorist carrier. Thus, the Lowe Court left it to the insurance carrier to choose whether to accept the risk of the "extraneous and corrupting influence" that would attend its appearance before the jury in the single proceeding chosen by the plaintiff. I fail to see how the manner in which the alleged tortfeasor's counsel is selected disrupts or otherwise has any bearing upon the arrangement adopted in Lowe, including in particular the manner in which the Lowe Court accommodated the plaintiff's right to litigate both its claims in the same proceeding.
It is true that in Driver the Court did make note of the fact that the uninsured-motorist carrier in that case had waived its subrogation rights against the alleged tortfeasor "in order to avoid any conflict [of interest]," 658 So.2d at 394; RLI has not waived its subrogation rights against the alleged tortfeasor here. Nowhere, however, does the Court in Driver state that the uninsured-motorist carrier's waiver of subrogation rights was necessary to its holding that the tortfeasor could be represented by the same counsel that previously had represented the uninsured-motorist carrier. There was no mention of any such waiver in State Farm. Further, the potential conflict referenced by the Court is one that would be between the uninsured/underinsured-motorist carrier and the alleged tortfeasor. (If anything, a less than zealous representation of the alleged tortfeasor resulting from counsel's knowledge that the insurer with whom he or she maintains a relationship maintains a right of subrogation against the alleged tortfeasor would tend to work to the plaintiff's advantage.) Again, I fail to see how, in a case where the alleged tortfeasor (and his or her liability carrier if applicable) chooses to be represented by an attorney proposed by the uninsured/underinsured-motorist carrier, and accordingly waives any possible conflict relating to such representation, the plaintiff has any "standing" to complain as to whom the alleged tortfeasor chooses to have represent him or her. Insofar as I can see, the alleged tortfeasor's choice of attorney does not disrupt the arrangement adopted in Lowe or, more specifically, deprive the plaintiff of the "benefit" intended for the plaintiff by that arrangement, i.e., litigating all its claims in one proceeding.[5]
NOTES
[1] A wrongful-death case styled Misty Marlar, individually, mother, and as administrator of the estate of Austin Blake Miller v. Gilbert Lee Littrell, as individual, and Edwards Oil Company of Lawrenceburg, Inc. (CV-05-0237), and based on the same motor-vehicle accident was consolidated with this case below.
[2] Thrasher has not presented this Court with a statement of facts. Rather, Thrasher has expressly adopted the statement of facts presented by Littrell. Thrasher states in brief that it is irrelevant whether RLI is paying her legal fees and that that fact does not alter Taylor's obligations to Thrasher as her counsel.
[3] The dissent states that it "cannot discern what concern it is of a plaintiff what counsel the alleged tortfeasor (and his or her liability carrier, where applicable) has chosen or agreed to (as has occurred here with respect to Taylor) or who pays counsel's fees." 73 So.3d at 1221. The plaintiff's concern, at least in this case, is the fact that the defendant RLI, who has chosen to opt out of the proceeding pursuant to Lowe, nevertheless continues to have a representative presence in the proceeding in the form of its former counsel, who potentially would be free to present evidence generated by RLI for the benefit of RLI while Littrell would be prohibited from discussing the identity of RLI and its reasons for being involved in the case. The dissent would allow RLI to have the "best of both worlds" by allowing it to participate in the proceeding, all the while enjoying the protection of its anonymity. This is not what is contemplated by this Court's decision in Lowe. For over 20 years the bench and bar have had a reliable mechanism in the underinsured scenario in Lowe. If an underinsured carrier were permitted to opt out and then allowed to provide the alleged tortfeasor representation in the form of its counsel, the mechanism provided in Lowe and concerns underlying the adoption of that mechanism would be rendered meaningless.
[4] The purpose of the procedures adopted by this Court in Lambert was to reduce the conflict that may arise between an underinsured carrier and its insured.
[5] Given the duties of loyalty and of zealous representation owed the tortfeasor by whatever counsel represents the tortfeasor, I do not believe this Court can assume that an underinsured-motorist carrier will have a "representative presence" or will be "participat[ing] in the proceeding" in the manner referenced in note 3 of the main opinion. 73 So.3d at 1220 n. 3. In any event, the three concerns identified in Lowe as informing the Court's decision are no less met where a tortfeasor chooses to be represented by counsel who previously represented an uninsured/underinsured-motorist carrier in connection with the case.